John H. MALLICK, an individual; Billy N. Chadwick, an individual, Appellants,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, a labor organization; Local Union No. 712, International Brotherhood of Electrical Workers, a labor organization; and Edwin D. Hill, Business Manager of Local Union No. 712 and an individual.

No. 80–1797.

United States Court of Appeals, Third Circuit.

Argued Dec. 4, 1980.

Decided Feb. 23, 1981.

---

Ronald A. Berlin (argued), Berlin, Boas, Isaacson & Logan, Pittsburgh, Pa., for appellants.

Stanford A. Segal (argued), Gatz, Cohen, Segal & Koerner, Pittsburgh, Pa., for International Brotherhood of Electrical Workers.

John G. Good, Jr., J. Philip Colavincenzo (argued), Reed, Luce, Good, Tosh, Kunselman & McGregor, Beaver, Pa., for Local Union 712 and Edwin D. Hill.

Before ADAMS, GARTH and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal presents an amalgam of issues under the union members' Bill of Rights section of the Labor-Management Reporting and Disclosure Act, commonly known as the Landrum-Griffin Act, 29 U.S.C. § 411 (1976). Plaintiffs John Mallick and Billy Chadwick, members of the International Brotherhood of Electrical Workers, (IBEW), filed a suit claiming that Local Union 712, its business manager, Edwin Hill, and the parent International Union violated rights protected by § 411 by bringing disciplinary charges and imposing fines against them under allegedly invalid provisions of the International Union Constitution. A jury returned a verdict against the Local Union and awarded punitive damages to Mallick and compensatory and punitive damages to Chadwick. However, the trial judge vacated the punitive damages awards in response to a motion brought by the Local Union for judgment notwithstanding the verdict. He also declined to grant injunctive and declaratory relief that had been requested by the plaintiffs. It is from these rulings that Mallick and Chadwick appeal.

### I. *Background*

Mallick and Chadwick were vocal and persistent critics of the IBEW leadership, and focused special attention on the administration of the union pension and welfare fund. They were active participants in an organization known as B.E.E., the Brotherhood of Electrical Employees, which was formed to improve conditions for rank and file workers within the union. In addition to publishing articles critical of the union in the B.E.E. newsletter, plaintiffs wrote to the Department of Labor and a Congressman alleging improprieties in the handling of the pension fund, brought a lawsuit concerning the fund, filed charges with the National Labor Relations Board relating to unfair employment practices by the union, and told their tales of mismanagement and inequitable treatment to local news reporters. When the Department of Labor even-

tually instituted legal action against the pension fund, the plaintiffs posted copies of the court papers in the union hiring hall. Mallick and Chadwick allege that in retaliation for these dissident activities they received far less desirable job assignments than other workers.

On October 21, 1976, Hill, the business manager of Local 712, initiated disciplinary charges against Mallick and Chadwick, claiming that their actions violated several provisions of the Union Constitution. The conduct specified in the charges included giving interviews to newspapers, during which Mallick and Chadwick made allegedly slanderous statements, participating in B.E.E., which entailed criticizing the IBEW, and posting in the hiring hall newspaper articles critical of the union leadership.[1] A trial board of the Local Union found Mallick guilty of violating seven provisions of the Union Constitution, and fined him $3,200.[2] It penalized Chadwick for four violations and fined him $2,000.[3]

In January and February of 1977, Hill preferred one additional charge each against Chadwick and Mallick. Chadwick was then adjudged guilty of violating Article 27, Section 1, Subsection 13, by "creating or participating in a disturbance . . . in or around the office or headquarters of a labor union," when he posted a copy of the Labor Department lawsuit in the hiring hall. For this, the trial board fined him an additional $350. The board found that when Mallick filed charges with the NLRB, he transgressed Subsection 1, which requires a member to exhaust internal union remedies before seeking court redress. Mallick was assessed a fine of $150 for this violation.

Mallick and Chadwick appealed to the International Union from all of the penalties imposed against them. The International representative who considered the appeals set most of the charges aside, concluding that some were not drawn with

1. Mallick was charged with violating Article 27, Section 1, Subsections 3, 4, 6, 7, 8, 9, 11 and 14. These Subsections make the following conduct punishable:
 (3) Violation of any provision of this Constitution and the rules therein, or the By Laws, Working Agreements, or rules of a L.U.
 (4) Having knowledge of the violation of any provision of this Constitution, or the By Laws, or rules of a L.U., yet failing to file charges against the offender or to notify the proper officers of the L.U.
 (6) Advocating or attempting to bring about a withdrawal from the IBEW of any L.U. or any member or group of members.
 (7) Publishing or circulating among the membership, or among L.U.'s false reports or misrepresentations.
 (8) Sending letters or statements, anonymous or otherwise, or making oral statements, to public officials or others which contain untruths about, or which misrepresent a L.U., its officers or representatives, or officers or representatives of the IBEW.
 (9) Creating or attempting to create dissatisfaction or dissension among any of the members or among L.U.'s of the IBEW.
 (11) Slandering or otherwise wronging a member of the IBEW by any willful act or acts.
 (12) Making known the business of a L.U. to persons not entitled to such knowledge.

Chadwick was charged with violating Subsections 3, 4 and 9, as well as Subsection 13, which prohibits:
 (13) Disturbing the peace or harmony of any L.U. meeting . . ., using abusive language, creating or participating in any disturbance, drinking intoxicants, or being intoxicated, in or around the office or headquarters of a L.U.
Chadwick was also charged with violating Article III, Subsection A of the Referral Procedure, because after he became dissatisfied with the jobs referred to him by the Union he sought to circumvent Hill by going directly to an employer and asking for work.

2. The Trial Board decision against Mallick was:

Subsection 3 — Guilty, fined $400.
 4 — Guilty, fined $400.
 6 — Not Guilty.
 7 — Guilty, fined $500.
 9 — Guilty, fined $500.
 11 — Guilty, fined $500.
 14 — Guilty, fined $400.

3. The Trial Board decision against Chadwick was:

Subsection 3 — Guilty, fined $500.
 4 — Not Guilty.
 9 — Guilty, fined $500.
 13 — Guilty, fined $500.
Article III, Section A — Guilty, fined $500.

sufficient particularity[4] or not supported by sufficient evidence.[5] On the charge against Mallick for failing to exhaust internal remedies, the International representative sustained the guilty finding but rescinded the monetary fine on the ground that federal law did not appear to permit such a penalty. The International representative also vacated the fines assessed against both Mallick and Chadwick under Subsection 3, which generally enables the union to punish members for violating any constitutional provision. As the International representative interpreted Subsection 3, it did not authorize penalties in addition to those imposed under the other substantive sections.

The International representative then overturned two of the charges against Mallick, because he found them to be inconsistent with federal law. The first involved Subsection 8, under which Mallick was charged with "making false statements . . . to public officials . . . which contain untruths about, or which misrepresent a local union." The conduct giving rise to this charge consisted of statements Mallick sent to the NLRB when he filed charges with that agency. The Landrum-Griffin Act protects the right of union members to sue or to file administrative charges against a union, 29 U.S.C. § 411(a)(4), and § 609 of the Act prohibits labor organizations from disciplining members for exercising any § 411 right. 29 U.S.C. § 529. Accordingly, the International representative found that the Subsection 8 charge "flies in the face of Federal law." The second charge was based on Subsection 14, which prohibits divulging union business to persons not entitled to such information. In dismissing this charge as incompatible with federal law, the representative narrowly interpreted the scope of Subsection 14 so as to reconcile this provision with the Landrum-Griffin Act. Mallick's action that gave rise to a charge under Subsection 14 was an interview he gave to the press, during which he discussed the Labor Department investigation of Local 712. Noting that Mallick enjoyed a federally guaranteed right to speak to the press, the International representative concluded that making public information available to the news media did not fall within Subsection 14's prohibition, and dismissed this charge as well as the fine based upon it.

Mallick and Chadwick then brought this lawsuit, seeking legal and equitable relief against the defendants under the Landrum-Griffin Act. They claimed that the disciplinary charges were illegal because they sought to punish conduct that was protected by the Act. In addition to compensatory and punitive damages, Mallick and Chadwick sought declaratory and injunctive relief barring further enforcement of the allegedly illegal provisions of the union constitution that had been invoked by Local 712.

A jury trial was held to resolve the claims for damages. At the close of plaintiffs' case Local 712 and Hill moved for a directed verdict, maintaining that the evidence was insufficient to support a finding of punitive damages.[6] The trial judge denied the motion, explaining that although it was his "visceral reaction" that punitive damages were not warranted, he preferred to let the jury decide the matter. Defendants then presented their case; counsel submitted requests for charge; and the court discussed the jury instructions with counsel. The defendants never renewed their motion for a directed verdict at any time before the case went to the jury. After the jury re-

---

4. The International representative dismissed the charges against Mallick under Subsections 4 and 8 for failure to identify dates of alleged infractions, the contents of statements or the parties to whom made. He also dismissed the Subsection 9 charge and the first of the two Subsection 13 charges against Chadwick because the Local had not specified dates or acts, thus depriving Chadwick of the ability to defend himself.

5. The penalties against Mallick for making slanderous or false statements in violation of Subsections 7 and 11 were reversed because the Local did not submit sufficient evidence to indicate that Mallick's statements to the press were actually untrue.

6. Plaintiffs did not seek punitive damages from the International union.

turned a verdict against Local 712, awarding Mallick $5,000 in punitive damages and Chadwick $1,000 in punitive damages and $4,000 in compensatory damages, Local 712 moved for judgment notwithstanding the verdict (n. o. v.). The judge granted the motion in part, striking the punitive damage awards but leaving undisturbed the award of compensatory damages to Chadwick.

Ruling on the equitable aspects of the case, the district court concluded that plaintiffs lacked standing to challenge the charges that had been dismissed or overruled by the International. It posited that plaintiffs had not suffered actual harm because no monetary penalty or determination of guilt had been finally imposed, and they had not alleged any threat of future harm from additional charges. Consequently, the district court considered the validity of only the provisions of the union constitution that formed the basis for charges sustained by the International. Rejecting plaintiff's challenge to Subsection 1, which required exhaustion of internal union remedies, the trial judge applied the factors set forth by this Court in *Semancik v. United Mine Workers District No. 5*, 466 F.2d 144 (3d Cir. 1972), and concluded that it was appropriate in this instance to require exhaustion because the union's internal appeals process was adequate to protect plaintiffs.

The district court also declined to overturn the penalty assessed against Chadwick for "creating or participating in a disturbance" in violation of Subsection 13. Interpreting this provision as compatible with a union's right to prescribe reasonable rules of conduct to protect the performance of its contractual obligations, 29 U.S.C. § 411(a)(2), the judge determined that it described sufficiently specific activity to withstand a challenge on grounds of vagueness. He also observed that Chadwick's action that led to an altercation with Hill—posting a copy of the Labor Department lawsuit—was undisputed, and he therefore sustained the finding of guilty. The trial judge employed a similar rationale in ruling that the guilty finding, without fines, under Subsection 3 did not constitute improper disciplinary action forbidden by § 411(a)(5) of the Landrum-Griffin Act. He reasoned that the general authorization of disciplinary power in Subsection 3 was a necessary enabling provision to allow the union to enforce its Constitution.

Finally, the district court granted a portion of the equitable relief requested by plaintiffs. It agreed with plaintiffs' characterization that Subsection 9, which makes punishable "creating or attempting to create dissatisfaction or dissension among" IBEW members, was overly-broad and ill-defined and thus inconsistent with the union members' free speech guarantee in § 411(a)(4). Concluding that the vague prohibition might discourage members from freely voicing opposition to union leadership, the judge enjoined the defendants from enforcing Subsection 9 and vacated the penalty assessed against Mallick. The defendants have not challenged this ruling, so it is not before us on this appeal. Accordingly, we shall confine our examination to the propriety of granting judgment n. o. v. and of denying the major portion of the injunctive relief sought by plaintiffs.

## II. *Judgment N.O.V.*

 It is a firmly entrenched rule that a court may grant a motion for judgment notwithstanding the verdict only when the moving party formally renewed its motion for a directed verdict at the close of all the evidence. *Lowenstein v. Pepsi-Cola Bottling Co. of Pennsauken*, 536 F.2d 9 (3d Cir.) *cert. denied*, 426 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976); 5A Moore's Federal Practice §§ 50–88–50–90 (2d ed. 1980). This rule is commanded not only by the language of Fed.R.Civ.P. 50(b), but also by the policy of the Seventh Amendment's guarantee of a jury trial. Unless a court has been alerted to deficiencies in proof by a motion for a directed verdict, a request that the court enter a judgment contrary to that of the jury is tantamount to asking the court to re-examine the facts as found by the jury. Such a re-examination would abridge the Seventh Amendment. See *Lowenstein, supra* at 11.

■ In defending its judgment n. o. v., Local 712 suggests that one of its requests for a jury instruction may be viewed as tantamount to a directed verdict motion. In request for charge number four, the defendants sought a binding instruction on the punitive damages issue, whereby the judge would have told the jury that plaintiffs had introduced no evidence demonstrating that defendants acted maliciously or in bad faith. The trial judge denied this request, however, and, consonant with his previously announced intention to do so, submitted the question of punitive damages to the jury.

In *Lowenstein* this Court rejected an identical argument that a request for a binding instruction should be treated as satisfying the prerequisite for a judgment n. o. v. We held that such a request will cure a failure to renew a motion for a directed verdict only when the district court explicitly treats and rules on the request as though it were a directed verdict motion and the parties are aware that the court regards it as such. 536 F.2d at 11–12 & n.5. The numerous precedents that supported this conclusion led the Court to observe that the law is "clear that the constitutional and procedural concerns summarized by [Professor] Moore are not allayed in this Circuit by a mere request for binding instruction." *Id.* at 12. Although there was a thoughtful dissent in *Lowenstein*, the majority holding remains the law in this Circuit, and thus is dispositive of the defendants' contentions in the present appeal. It is apparent that the trial judge here did not regard the request for charge as the equivalent of a directed verdict motion, nor did he rule on it as such.[7] Instead, he denied the request, thereby indicating that the jury should decide whether the evidence revealed malicious or bad faith behavior. Moreover, nothing in the record suggests that counsel understood the judge to treat the request for charge as a request for a directed verdict. Indeed, the opposite impression is gleaned from the record. Counsel vigorously argued the matter of jury instructions, obviously assuming that the jury would be the final arbiter on the damages issue.[8]

Paralleling the dissent in *Lowenstein*, Local 712 contends that unless we forgive its failure to renew the directed verdict motion, we would be exalting an overly rigid and technical application of Rule 50(b) over interests in judicial efficiency. We, however, do not deem a rule whose underpinnings rest in the United States Constitution to be a mere technicality that should be readily dispensed with. Moreover, judicial efficiency may be better served when jury verdicts receive the respect to which they are entitled under the Seventh Amendment.

For these reasons, the district judge erred when he granted Local 712's motion for judgment notwithstanding the verdict, and the verdict awarding punitive damages to Mallick and Chadwick must be reinstated.[9]

7. The trial judge only discussed a directed verdict in connection with requests for instructions submitted by the International Union, when he observed that he would remind the jury that the case did not involve a claim for punitive damages against the International. The tenor of the colloquy between court and counsel for Local 712, however, was geared entirely towards letting the jury, rather than the court, consider plaintiffs' claims.

8. While it is not plausible to argue in this case that anyone understood the requested instructions as a motion for a directed verdict, it is worth noting that in *Lowenstein* counsel submitted a request for binding instructions that read: "You are directed to enter a verdict in favor of defendants." 536 F.2d at 13 (Hunter, J., dissenting). Yet even this request was insufficient to overcome the requirement of Rule 50(b) that counsel actually move for a directed verdict.

9. Having concluded that the jury award must be reinstated, we need not consider the argument of Local 712 that the evidence was insufficient to support a finding that punitive damages were warranted, except insofar as Local 712 moved in the alternative for a new trial in the event the district court did not grant its motion for judgment n. o. v. In light of the numerous charges brought against plaintiffs for activities, such as speaking to news reporters, that are at the core of First Amendment protections, and actions, such as filing charges with the NLRB, that are clearly safeguarded under § 411, and given the abusive reaction of Hill when Chadwick posted in the union hall public information about court activity, we cannot say that a reasonable jury could not have found

## III. *Equitable Relief*

Plaintiffs predicate their claims for declaratory and injunctive relief on the contention that the provisions of the International Constitution invoked against them are so broadly worded that they encompass activity clearly protected by the Labor-Management Reporting and Disclosure Act. The union members' Bill of Rights section of the Act, 29 U.S.C. § 411, extends to every member the "right to meet and assemble freely with other members; and to express any views, arguments, or opinions...." 29 U.S.C. § 411(a)(2). Section 411 also forbids labor organizations from limiting a member's right to seek redress in a court or administrative agency, or to petition legislators. *Id.* § 411(a)(4). Labor organizations may not discipline members for engaging in conduct protected by § 411, and they must afford members the procedural safeguards of notice and a hearing before imposing punishment. *Id.* § 411(a)(5). Finally, § 411 declares that "any provision of the constitution and bylaws of any labor organization which is inconsistent" with the Bill of Rights shall have no force or effect. *Id.* § 411(b).

■ The Bill of Rights section of the Act is designed to foster democratic governance within labor unions, and to encourage members freely to dissent from the policies and administration of the leadership or to discuss openly those policies and practices. *See, e. g., Semancik v. United Mine Workers of America Dist. No. 5,* 466 F.2d 144 (3d Cir. 1972). In conformity with this policy, the power of unions to adopt rules of conduct is construed narrowly, and the members' right of free speech is given an expansive protection. As we recognized in *Semancik,*

> ... the courts have responded by making clear that labor organizations properly exercise their disciplinary powers only over a limited area of proscribed conduct inimical to the union as an entity and collective bargaining mechanism. Unless statements fall into these categories, they

are protected from union action even if libelous, *Salzhandler v. Caputo,* 316 F.2d 445 (2d Cir. 1963), *cert. denied,* 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963), or malicious, *Cole v. Hall,* 339 F.2d 881 (2d Cir. 1965). This court has determined that even a loosely-worded threat to a fellow union member may not at times be sufficient to justify punishment. *Kelsey v. Philadelphia Local No. 8,* IATSE, 419 F.2d 491 (3d Cir. 1969), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1501, 25 L.Ed.2d 685 (1970).

466 F.2d at 153. *See also, Keefe Bros. v. Teamsters Local Union No. 592,* 562 F.2d 298, 304 (4th Cir. 1977).

These precepts must inform our resolution of plaintiffs' allegations that vague constitutional provisions have been used to punish them for their vociferous criticism of the leadership of Local 712.

### A. *Standing*

■ In refusing to consider the major portion of plaintiffs' contentions, the district court was not sufficiently alert to the unique nature of infringements on freedom of speech. It concluded that, with regard to the penalties overturned by the International, plaintiffs had not suffered any actionable injury. Harm to free speech rights, however, is not measured solely in economic terms, nor must concrete punishment be meted out to confer standing to sue. The right to speak one's views freely is so fundamental that the spectre of punishment, or the uncertainty created by a vaguely worded prohibition of speech, is injurious as well. *Cf. Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The Supreme Court, in *Dombrowski,* declined to abstain from enjoining a state prosecution, and observed that "because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights.... [The] chilling effect upon the exercise of First Amendment rights

bad faith on the part of the local union. Accordingly, a new trial is not warranted, and

judgment should be entered consistent with the jury verdict.

may derive from the fact of the prosecution, unaffected by the prospects of its success or failure."

The need to avoid chilling free speech rights is just as compelling in the context of the Landrum-Griffin Act. The goal of union democracy, achieved through the expression of opposing viewpoints, would be difficult to realize if members felt deterred from expressing their opinions by the prospect of disciplinary proceedings. Here, Mallick and Chadwick actually had to undergo the disciplinary process, and regardless of the eventual outcome on appeal, the message was clear to them that they were being subject to disapproving scrutiny because of their opposition to the leadership.

▇ Mallick and Chadwick have suffered several other injuries besides the chilling effect of a broad proscription against speech and of enduring the steps instituted by the union to subject them to punishment. They have alleged harassment in the bringing of charges for clearly protected activity such as talking to newsmen and communicating with the NLRB, Congressmen, and Labor Department officials, and they also claim retaliation by the union in the form of less desirable job assignments. These claims of emotional distress and economic injury were deemed sufficient to support damage awards by the jury, and they confer standing to challenge the validity of a union constitution which was invoked to punish them for protected conduct. This is especially true where, as here, many of the charges were dismissed for failure to specify dates or concrete actions. Such a resolution does nothing to reduce the chilling impact of an expansive prohibition, and leaves open the possibility of future, albeit more carefully drawn, charges for merely setting forth their views. *See Keefe Bros., supra*, where a union member was permitted to seek redress for an allegedly illegal denial of readmission to the union, even though the union executive board later rescinded the action. The court in *Keefe Bros.* pointed out that the plaintiff had still suffered emotional distress, injury to reputation, and had faced increased difficulty in

securing satisfactory employment. 562 F.2d at 304.

Because Mallick and Chadwick suffered actual harm despite the action of the International Union in vacating the monetary penalties against them, the district court erred in refusing to consider their claims for equitable relief. Accordingly, the case will be remanded to the district court in order that it may determine whether the constitutional provisions conflict with § 411 of the Landrum-Griffin Act. On remand, the district court should be guided by the principle of broad protection for union members' free speech rights announced in *Semancik, supra*. For example, the charges that Mallick and Chadwick made false or slanderous statements to the press do not appear to be consistent with the scope of protection accorded to dissidents. Moreover, a constitutional provision that leaves room for a local union to prefer charges for clearly safeguarded statements or actions, such as writing articles or talking to the news media, may not withstand a challenge under § 411. In deciding whether to enjoin a provision, however, the district court may also consider the extent to which the International representative clarified or narrowly interpreted a subsection in an effort to conform its reach to the dictates of federal law. For example, the International representative determined that Subsection 14 could not be construed to prohibit divulging public information to the press. *See Semancik, supra*, 466 F.2d at 154 (When feasible, courts should permit unions, through their decisionmaking process, to redefine or delineate vague provisions.)

### B. *The Validity of the Intra-Union Exhaustion Requirement*

Our recent decision in *Pawlak v. Greenawalt*, 628 F.2d 826 (3d Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981), is dispositive of the validity of Subsection 1 of the IBEW constitution, which requires union members to exhaust internal remedies before resorting to a court or administrative agency. In *Pawlak*, where we examined an identical

provision in the constitution of the Teamsters Union, the question was whether § 411(a)(4) of the Landrum-Griffin Act prevented a union from punishing a member for suing the union without first exhausting intra-union procedures.

Section 411(a)(4) generally prohibits unions from limiting a member's right to sue. The union in *Pawlak* contended, and the unions here also argue, that the proviso to that section authorizes unions to adopt intra-union exhaustion clauses. The proviso states:

That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative procedures against such organization or any officer thereof . . .

Examining the purpose of the right to sue in § 411(a)(4), as well as the Supreme Court interpretation of the statute, we concluded in *Pawlak* that the proviso confers upon courts discretion to require exhaustion before exercising their jurisdiction, but that it extends no such similar power to unions. Thus, we invalidated and enjoined enforcement of the Teamsters' intra-union exhaustion requirement.

Subsection 1 of the IBEW Constitution must be declared void and enjoined on the authority of *Pawlak*. The defendants insist, however, that we should not reverse the district court because the judge did not have the benefit of our decision in *Pawlak*, and because he properly applied exhaustion standards we had set forth in *Semancik, supra.*

There are two answers to these contentions. First, we are obliged to apply and enforce the law as it exists at the time we decide an appeal. See, e. g., *Bradley v. School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1973); *Thorpe v. Housing Authority*, 393 U.S. 268, 281–82, 89 S.Ct. 518, 525–526, 21 L.Ed.2d 474 (1969). Second, it is readily evident that the criteria in *Semancik* were addressed to courts, rather than unions, and were designed to guide the exercise of judicial discretion. There is

nothing in *Semancik* to indicate that unions have the power to insist on exhaustion. Indeed, in that case we repeated the well-established rule that "whether or not a plaintiff will be required to utilize his internal union appeals is a matter within the discretion of the trial judge." 466 F.2d at 150.

*Pawlak* did not effectuate a change in the law. Rather, the opinion there was based on a previous direction from the Supreme Court, and it reached the same conclusion that had been earlier adopted by other courts of appeal. All of these decisions were available, of course, when the district court adjudicated the claims advanced by Mallick and Chadwick. The Supreme Court interpreted § 411(a)(4) in *NLRB v. Industrial Union of Marine and Shipbuilding Workers*, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968), a case in which the union expelled an employee for filing charges with the NLRB before pursuing all available internal procedures. In considering the proviso, the Court held:

We conclude that "may be required" [the words in the proviso] is *not a grant of authority to unions more firmly to police their members* but a statement of policy that the public tribunals whose aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union. We read it, in other words, as installing in this labor field a regime comparable to that which prevails in other areas of law before the federal courts, which often stay their hands while a litigant seeks administrative relief before the appropriate agency.

*Id.* at 426, 88 S.Ct. at 1030 (emphasis added).

In 1969, the Ninth Circuit applied this holding to overturn a fine imposed by a union on a member who failed to exhaust internal remedies, remarking that

Once it is established that the proviso in 29 U.S.C. § 411(a)(4) is a policy guide for the courts and not a grant of authority for the union, and we think that at least that much is established by *Marine Work-*

*ers, supra,* then for the purpose of examining the limits of permissible union discipline we are left with these words: "no labor organization shall limit the right of any member thereof to institute an action in any court or in any proceeding before any administrative agency...."

*Operating Engineers Local 3 v. Burroughs,* 417 F.2d 370, 372 (9th Cir. 1969), *cert. denied,* 397 U.S. 916, 90 S.Ct. 921, 25 L.Ed. 97 (1970). In *Ross v. I. B. E. W.,* 544 F.2d 1022 (9th Cir. 1976), the court voided the precise exhaustion provision of the I.B.E.W. Constitution that is before us in the current appeal.[10]

As these cases have recognized, the prohibition in § 411(a)(4) against a union's limiting recourse by a member to the courts would be an empty one, indeed, if a union could punish a member who does not wait four months before exercising the right to sue. We may not construe the provision in § 411(a)(4) to vitiate the right guaranteed by that section.

The conclusion of the district court that Subsection 1 of the IBEW Constitution is valid under federal law must therefore be reversed, and the International and Local 712 will be enjoined from further efforts to enforce this subsection with disciplinary action.

IV. *Conclusion*

To summarize our disposition of this appeal: We will reverse (1) the entry of judgment n. o. v.; (2) the ruling that plaintiffs' lacked standing to seek certain equitable relief; and (3) the refusal by the district court to enjoin Subsection 1. Finally, the matter will be remanded to the district court to reinstate the jury verdict in favor of Mallick and Chadwick, and, consistent with this opinion, to consider plaintiffs' remaining equitable claims.

10. In view of the injunction affirmed in *Ross,* it may be questioned why Subsection 1 was still being enforced. Local 712, which invoked the provision, was not a party in *Ross,* and the action of the International vacating the fines may have been an effort to conform with the

Ninth Circuit's prohibition of discipline under Subsection 1.

