Stuart STEIN, Plaintiff-Appellee,

v.

The BOARD OF the CITY OF NEW YORK, BUREAU OF PUPIL TRANSPORTATION, A.C.J. Transportation Corp., Anthony DiDomenico, and Leonard A. David, Defendants,

Appeal of The BOARD OF EDUCATION OF the CITY OF NEW YORK, Leonard A. David, Defendants-Appellants.

No. 1237, Docket 86–7139.

United States Court of Appeals, Second Circuit.

Argued April 28, 1986.

Decided May 22, 1986.

Fay S. Ng, Corp. Counsel of the City of New York (Frederick A.O. Schwartz, Jr., Corp. Counsel, Ellen B. Fishman, of counsel), New York City, for defendants-appellants Board of Educ. and Leonard David.

Paul A. Shneyer, Shneyer & Shen, P.C., New York City, for plaintiff-appellee Stuart Stein.

Before FEINBERG, Chief Judge, and KAUFMAN and OAKES, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Stuart Stein was employed as a bus driver by A.C.J. Transportation, Inc. ("ACJ") from 1979 to 1982. The exclusive business of ACJ was to provide bus transportation for handicapped children as directed by the New York City Board of Education.

By the terms of his written contract with ACJ, Stein could not be discharged from his employment except for just cause. A written agreement between ACJ and the Board of Education, however, provided that ACJ "shall only employ persons of good moral character to serve as vehicle operators." Certification that a vehicle operator had received appropriate training was a prerequisite to a driver operating on a Board of Education route. The agreement further provided that, after determination by the Director of the Bureau of Pupil Transportation that a driver's competency "falls below acceptable standards ... [ACJ], upon receiving written notice from the Director to that effect, shall not again employ this operator on any part of the work to be performed hereunder, or on any part of the work the contractor may perform for the Board of Education under any other contract."

In early April, 1982, the Chief of Staff at the Bureau of Pupil Transportation of the Board of Education ("Bureau") received anonymous telephone calls reporting that a school bus driver had fondled himself on the bus. The Bureau asked ACJ to investigate the complaints. On April 2, Anthony DiDomenico, the president of ACJ, reported to the Bureau that a chaperone[1] who rode the bus with Stein had complained that Stein had exposed himself while driving the bus. The Bureau instructed DiDo-

---

1. The chaperones, or "matrons," were women who assisted the handicapped children during the bus rides.

menico not to allow Stein to drive on Board of Education routes until a hearing could be held. Accordingly, when Stein returned to the ACJ garage that evening after completing his route, he was informed that he would not be permitted to drive for ACJ in the future. No explanation was given.

On April 3, ACJ sent the Bureau a written report containing allegations by several female chaperones that Stein had made sexual advances to them. One of the chaperones, Maxine Brown, sent a letter to the Bureau alleging that Stein had brought women on the bus "who looked very much like prostitutes," and that Stein had asked Brown to buy marijuana for him. Alarmed by these reports, Leonard David, Director of Compliance for the Bureau, decided to conduct a hearing. David testified that he instructed a member of his staff to send a notice of hearing to ACJ, with a request that a copy of the notice be forwarded to Stein.

The only notice Stein received, however, was a handwritten note from David with the date and the time of the hearing, and verbal instructions from an employee of ACJ to appear at the hearing office of the Bureau on Monday, April 12, 1982.

Stein went to the April 12 meeting with his union representative. For the first time, Stein was shown the letters written by the chaperones, none of whom were present at the hearing. Stein submitted letters attesting to his good character. Nonetheless, the following day, David informed ACJ that Stein was barred from driving on Board of Education routes because he fell below the standards of "good moral character" required by the contract between the Board of Education and ACJ.

Shortly thereafter Stein was discharged by ACJ. He filed a grievance with his union, and the matter went to arbitration. Both sides submitted evidence, and the arbitrator declined to overturn the decision by ACJ to fire Stein.

On December 22, 1982, Stein brought an action in federal district court pursuant to 42 U.S.C. § 1983, alleging a deprivation of due process because he did not receive adequate notice or a fair hearing before his disqualification by the Board of Education. Leonard David, the New York City Board of Education, ACJ and DiDomenico were named defendants. After a four-day jury trial, Judge Nickerson charged the jury that "Mr. Stein's job is protected by due process of law," rejecting defendants' request that the jury be instructed that in New York the decertification of a school bus driver is not a constitutionally protected property right. In addition, the district judge denied defense counsel's requested charges that Leonard David might be entitled to a good faith defense, and that the jury should award only nominal damages if it found that Stein would have been discharged by ACJ even if he had received adequate notice.

In response to four special interrogatories, the jury found Stein had not received adequate notice of the charges against him, but that defendants ACJ and DiDomenico did not conspire with the state to deprive Stein of his constitutional rights. Accordingly, it found only defendants Leonard David and the Board of Education liable for lost wages. Judgment was entered on January 24, 1986, awarding Stein $15,000 in compensatory damages plus attorneys' fees, and directing the Board of Education to hold a new hearing to determine whether Stein should be permitted to drive school buses on Board of Education routes. Leonard David and the Board of Education now appeal.

## DISCUSSION

■ We turn first to the difficult question whether Stein's continued employment by ACJ is a protected property interest such that the state violated his procedural due process rights when it revoked his certification and caused his discharge. The district judge charged the jury that it was. For reasons which we present below, we agree.[2]

2. In denying defendants' motion for summary

judgment on the issue whether Stein had a con-

In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court wrote:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it ...
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709.

In *Roth*, the Court held that a nontenured state university teacher holding a one-year appointment did not have a "liberty" or "property" interest in continued employment at the school. In the case before us, stitutionally protected property interest, Judge Nickerson relied on the Supreme Court holding in *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). Greene was an engineer who worked for a private contractor on a military installation. After working for the same company for many years, the employee lost his job when the United States Department of Defense revoked the security clearance giving him access to classified documents. The Defense Department had received information that the employee was sympathetic to communism, and on the basis of that information revoked the engineer's security clearance without affording him a hearing. When his employer, having no other choice, was forced to discharge him, Greene was unable to procure employment elsewhere in his field.

The Court, noting that the procedures used to revoke the petitioner's security clearance were not explicitly authorized by the President or Congress, held that the method used to determine petitioner's clearance status did not comport with "traditional ideas of fair procedure." 360 U.S. at 508, 79 S.Ct. at 1419.

The next year, the Supreme Court demonstrated the limited scope of the *Greene* decision in *Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO, et al. v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). In *Cafeteria Workers*, the petitioner was a cook who worked for a private catering service on a military installation. Like the engineer in *Greene*, the cook's security clearance was revoked without a hearing. In *Cafeteria Workers*, however, the Court held that the revocation of the cook's security clearance without a hearing did not violate the Due Process Clause of the Fifth Amendment. The Court noted that *Greene* had failed to reach the constitutional issue whether an employee had a protected property interest in his security clearance status. Moreover, it found that the explicit Congressional authorization absent in *Greene* was in fact present in *Cafeteria Workers*. The Court went on to hold that the petitioner, who had been offered but had refused employment by her company at locations outside the military installation, had been denied only "the right to work at one isolated and specific military installation." 367 U.S. at 896, 81 S.Ct. at 1749. Accordingly, it found that in light of the Government's important role as proprietor of a military establishment, notice and hearing were not constitutionally required.

Because both *Greene* and *Cafeteria Workers* are decisions carefully tailored to their facts, it is difficult to discern which is the rule and which the exception. *See* Friendly, *Some Kind of Hearing*, 123 U.Pa.L.Rev. 1263, 1273 (1975). While the majority on *Cafeteria Workers* believed that fair notice and a hearing were not required when the cook's security clearance was revoked, the Court was strongly influenced by the fact that the cook "remained entirely free to obtain employment as a short-order cook or to get any other job, either with [her present employer] or with any other employer." 367 U.S. at 896, 81 S.Ct. at 1749. Moreover, the Court found that the revocation of clearance did not "bestow a badge of disloyalty or infamy, with an attendant foreclosure from other employment opportunity." 367 U.S. at 898, 81 S.Ct. at 1750.

In these respects *Cafeteria Workers* differs from the case before us now. Stein's disqualification as a school bus driver for the Board of Education meant that he could not transport students for the Board of Education under the current contract or any other contract ACJ might have with the Board. We have previously held that heightened procedural safeguards are required when a government agency seeks to foreclose further relations with a party, compared to the mere refusal to renew a particular contract or set of contracts. *Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252, 1259–60 (2d Cir.1975). Moreover, Stein's disqualification was based upon a written finding that he fell below the standards of "good moral conduct," thereby tainting his chance of obtaining other employment involving the transportation of students. *See Birnbaum v. Trussell*, 371 F.2d 672, 679 (2d Cir.1966); *Huntley v. Community School Board of Brooklyn*, 543 F.2d 979, 984–86 (2d Cir.1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977), *appeal after remand*, 579 F.2d 738 (2d Cir.1978).

however, Stein's contract with ACJ provided that Stein would not be discharged except for "good cause." The "good cause" for the discharge was supplied by the state, which by disqualifying the employee foreclosed him from doing his job. Accordingly, Stein's "claim of entitlement" arose from his contract with ACJ.

■ We have previously noted that "liberty" or "property" protected by due process need not always flow from guaranty under state law or the Constitution. *Huntley v. Community School Board of Brooklyn*, 543 F.2d 979, 986 n. 8 (2d Cir.1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977), *appeal after remand*, 579 F.2d 738 (2d Cir.1978). Where the independent source of a property interest is a private contract, the state cannot transgress on the claim of entitlement to continued employment without due process of law.[3]

We need not reach the broad question whether Stein's certification as a vehicle operator by the Board was itself a property interest protected by the constitutional safeguards of due process. Although certification of a driver to work on Board of Education routes might bear some comparison to licensing of professions by the state, *see, e.g., Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971) (suspension of driver's license invokes procedural due process protections when it prevents pursuit of chosen employment); *Keney v. Derbyshire*, 718 F.2d 352, 354 (10th Cir.1983) (medical license is constitutionally protected property right); *Herz v. Degnan*, 648 F.2d 201, 208 (3d Cir.1981) (license to practice psychology is constitutionally protected property interest), our holding in this case rests on the narrower ground that Stein had a protected property interest in his continued employment with ACJ.

The New York case of *Morales v. Board of Education*, 125 Misc.2d 310, 479 N.Y. S.2d 330 (Sup.Ct.Nassau Co.1984), comports with our holding. In *Morales*, a school district decertified a bus driver who worked for a private contractor. The plaintiff, however, continued to work for her employer and could have driven for other school districts with which the company contracted. Here, we hold that Stein's protected property interest lies in his continued employment by ACJ, not in the certification itself. The court's finding in *Morales* that the plaintiff suffered no deprivation of property because she was not discharged, therefore, does not conflict with our holding.

Having correctly determined that Stein had a protected property interest in his continued employment, the district judge instructed the jury that due process requires the state to provide adequate notice and a hearing before it expropriates the property of an individual. Accordingly, the jury found that Stein had not received adequate notice of the nature of the charges against him, and awarded Stein $15,000 in compensatory damages against Leonard David and the Board of Education. David contends, however, that the district judge erroneously refused to instruct the jury that they could assess no damages against David if they found him to have acted in good faith in his actions with respect to Stein. We disagree.

■ Qualified or "good-faith" immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In *Harlow*, the Court held that in deciding a motion for summary judgment a judge may

---

**3.** We do not address appellants' contention that had Stein been employed directly by the Board of Education, he would not have a constitutionally protected right in his certification unless he was a civil service employee or his termination was otherwise proscribed by statute or contract.

Rather, we simply hold that Stein's contract with ACJ gave rise to a legitimate claim of entitlement to his continued employment, and his disqualification as a certified bus driver by the Board of Education was state action that deprived him of that property.

determine whether the law was clearly established at the time an action occurred, thereby measuring the objective reasonableness of an official's conduct. 457 U.S. at 818, 102 S.Ct. at 2738. To the extent it eliminated the subjective intent element from the good-faith immunity defense, *Harlow* implicitly overruled the Court's prior holding in *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 *reh'g denied,* 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975) (good-faith immunity applies if an official "*knew* or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with malicious intention to cause a deprivation of constitutional rights or other injury...." (emphasis added)). Accordingly, the Court rejected preliminary holdings that the good-faith immunity defense required a factual inquiry into whether an official harbored a subjective intent to violate a person's civil rights. *See, e.g., O'Connor v. Donaldson,* 422 U.S. 563, 577, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396 (1975); *Landrum v. Moats,* 576 F.2d 1320 (8th Cir.1978), *cert. denied,* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978); *Duchesne v. Sugarman,* 566 F.2d 817, 832–33 (2d Cir.1977).

■ By omitting the subjective element of the test for "good-faith" immunity, the Supreme Court sought to minimize disruptive judicial inquiries into the motives of government officials exercising discretion in their duties. 457 U.S. at 816–17, 102 S.Ct. 2737–38. Accordingly, whether the law on a particular issue is clearly established is now a question of law to be determined by the court.

■ We find, however, that this issue was not properly raised in the district court. In their motion for summary judgment before trial, appellants argued only that David was protected by the doctrine of absolute immunity in his role as a hearing officer—an argument that was rejected by the trial judge and is not raised on appeal. After presentation of all the evidence at trial, appellants requested the judge charge the jury on the good-faith immunity defense. As we have already noted, however, this issue is not appropriate for a jury determination, and the district judge correctly declined to include it in the jury instructions.[4] David therefore waived his right to raise the good-faith immunity defense.

We now turn to the final issue on appeal, whether the district judge erred by refusing to instruct the jury that only nominal damages were appropriate if they found Stein would have been discharged by ACJ even if he had received proper notice from the school board.

In *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court held that students who had been suspended from school without a hearing could receive only nominal damages if the jury found they would have been suspended even if their procedural due process rights had not been violated. The Court stated that a damage award for the suspensions where the failure to accord procedural due process was not the cause of the suspensions would be a windfall to the plaintiffs. 435 U.S. at 260, 98 S.Ct. at 1050. Acknowledging that mental and emotional distress caused by a denial of due process is compensable pursuant to § 1983, the Court held that proof of such injury nonetheless had to be shown to justify an award of damages. 435 U.S. at 264, 98 S.Ct. at 1052.

■ Here, the special verdict delivered by the jury clearly indicated that $15,000 was awarded to Stein to compensate for lost wages because the Board of Education and Leonard David failed to give Stein adequate notice. The jury did not, nor were they instructed to, determine whether

---

**4.** We decline to construe appellants' requested jury charge as an application to the district court for a directed verdict for David based on the good-faith immunity defense. *See Mallick v.* *International Brotherhood of Electrical Workers,* 644 F.2d 228, 234 (3d Cir.1981); *Lowenstein v. Pepsi-Cola Bottling Co. of Pennsauken,* 536 F.2d 9, 11–12 (3d Cir.1976).

Stein would have been discharged by ACJ regardless of the actions of the state. We recognize that such a determination may involve the taking of additional evidence and create a further imposition on the district court. Nonetheless, we think the Supreme Court's directive in *Carey* is clear and unequivocal. *See Huntley v. Community School Board*, 579 F.2d at 740. The district judge, therefore, should have instructed the jury to award only nominal damages if it found Stein would have been discharged by ACJ even had he received adequate notice of his disqualification proceeding from the state.

## CONCLUSION

■ Accordingly, the judgment is reversed and the case remanded to the district court for proceedings consistent with this opinion.[5]

---

**5.** We believe the issue of nominal damages is "sufficiently distinct from the other issues that a separate trial may be had without injustice." *Martell v. Boardwalk Enterprises, Inc.,* 748 F.2d 740, 756 (2d Cir.1984). Accordingly, the new trial should be limited to the damages issue.

*See Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); *Akermanis v. Sea-Land Service, Inc.,* 688 F.2d 898, 906–07 (2d Cir.1982), *cert. denied,* 461 F.2d 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983); Fed.R.Civ.P. 59(a).