**Sophie PARILLO, Executrix of the Estate of Vincent Parillo**

v.

**Ashwin SURA, et al.**

**Civ. No. H–84–1233 (PCD).**

United States District Court,
D. Connecticut.

Feb. 13, 1987.

Joseph I. Lieberman, Atty. Gen., Francis J. MacGregor, Asst. Atty. Gen., Hartford, Conn., for plaintiff.

Andrew B. Bowman, Westport, Conn., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

### Background

Plaintiff's decedent, Vincent Parillo, was committed by the New Haven Probate Court to Connecticut Valley Hospital on November 12, 1982, because Parillo was "mentally ill and gravely disabled" as he suffered from severe depression, organic brain syndrome and dementia, diabetes and Parkinsonism. One of the four examining physicians and psychologists believed that he was dangerous to himself in addition to being gravely disabled. At Connecticut Valley Hospital, Parillo denied any suicidal feelings and requested that he be discharged to live with his sister. Defendants arranged his discharge and outpatient treatment. Parillo was discharged on November 23, 1982. On December 12, 1982, Parillo hanged himself and died eight days later.

Plaintiff brings this action in three counts. The first, under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, names as defendants employees of Connecticut Valley Hospital,[1] in their official capacity alleging eighth and fourteenth amendment violations. The second, a wrongful death claim under state law, alleges negligence and medical malpractice. The third alleges a conspiracy to deprive Parillo of his civil rights. The second and third counts and the eighth amendment portion of the first count were previously dismissed.[2] Plaintiff alleges that defendants' gross negligence and deliberate indifference to plaintiff's decedent's psychiatric needs deprived him of life without due process of law, as required by the fourteenth amendment. Defendants assert qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons set forth below, defendants' motion for summary judgment is granted.

### Discussion

A motion for summary judgment may be granted only when there is "no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.; *EEOC v. Home Ins. Co.,* 672 F.2d 252, 256

---

1. By stipulation, the complaint against defendant Ashwin Sura was dismissed on September 2, 1986.

2. Because plaintiff's eighth amendment claims have been dismissed, cases establishing a right to medical care for prisoners are inapposite. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (intentional delay or denial of medical care to a prisoner violates the eighth amendment).

(2d Cir.1982). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The purpose of the motion is "to isolate and dispose of factually unsupported claims and defenses." *Id.* Summary judgment is appropriate where the claim must be decided on a question of law. *See, e.g., Satchell v. Dilworth,* 745 F.2d 781, 784–85 (2d Cir. 1984) (summary judgment appropriate where qualified immunity exists and is affirmatively pleaded).

### Qualified Immunity

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 (emphasis added). The same standard there applied to federal officials standard would probably apply to state officials. *Id.* at 818 n. 30, 102 S.Ct. at 2738 n. 30. *See also Pollnow v. Glennon,* 757 F.2d 496, 500–01 n. 5 (2d Cir.1985) (applying *Harlow* standard to state officials). Plaintiff concedes that defendants' decision to discharge plaintiff's decedent was a discretionary act. The only issue, therefore, is whether defendants had reason to know[3] that their conduct would violate a "clearly established" constitutional or statutory right. Plaintiff claims that a fourteenth amendment right to psychiatric treatment for civilly committed mentally ill persons was clearly established when plaintiff's decedent was discharged in November 1982.[4]

■ Whether a right is "clearly established" for qualified immunity purposes is a question of law. *Stein v. Board of City of New York,* 792 F.2d 13, 17 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 572, 93 L.Ed.2d 576 (1986). The existence of the right must be unquestioned. *See, e.g., Security & Law Enforcement Employees v. Carey,* 737 F.2d 187, 211 (2d Cir.1984) (defendants protected by qualified immunity from fourth amendment claim because they "operated in an area in which the law was not charted clearly"); *O'Hagan v. Soto,* 725 F.2d 878, 879 (2d Cir.1984) ("uncertainty as to whether [the sixth amendment right to counsel] had attached ... entitles [defendant] to resist liability on the basis of qualified immunity").

■ A clearly established constitutional right to psychiatric treatment for civilly committed mentally ill persons did not exist in 1982. The Supreme Court has expressly reserved the question of whether a general constitutional right to treatment for involuntarily committed mentally ill or mentally retarded persons exists. *See Youngberg v. Romeo,* 457 U.S. 307, 318, 102 S.Ct. 2452, 2459, 73 L.Ed.2d 28 (1982); *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 16 n. 12, 101 S.Ct. 1531, 1539 n. 12, 67 L.Ed.2d 694 (1981); *O'Connor v. Donaldson,* 422 U.S. 563, 573, 95 S.Ct. 2486, 2492, 45 L.Ed.2d 396 (1975); *Jackson v. Indiana,* 406 U.S. 715, 737, 92 S.Ct. 1845, 1857, 32 L.Ed.2d 434 (1972).

In *O'Connor,* a limited constitutional right to treatment was recognized for a mentally ill person committed for treatment. 422 U.S. at 566–69, 576, 95 S.Ct. at 2489–90, 2494. This did not extend a constitutional right to treatment for persons committed because they were thought to be dangerous or unable to care for themselves. *Id.* at 573–74, 95 S.Ct. at 2492–93. The Connecticut statute under which Paril-

---

3. *Harlow* overruled prior case law requiring subjective as well as objective good faith. *See, e.g., Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). This change, in part, facilitated disposition of cases by summary judgment. *Harlow,* 457 U.S. at 816–18, 102 S.Ct. at 2737–38.

4. Plaintiff does not claim any federal or state statutory violation. Violations of state law are not cognizable under 42 U.S.C. § 1983. *Pollnow,* 757 F.2d at 501, citing *Davis v. Scherer,* 468 U.S. 183, 193, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984).

lo was committed permits involuntary commitment only for persons who are dangerous or unable to care for themselves ("gravely disabled"). Conn.Gen.Stat. § 17–178(c) (1985). Parillo was committed because he was gravely disabled, with one of the examining psychiatrists finding him also to be dangerous to himself.

In *Youngberg*, decided several months prior to plaintiff's decedent's discharge, a committed mentally retarded individual was held to have a constitutional right to "minimally adequate training" to the extent necessary to protect his liberty interest in safe conditions of confinement and freedom from restraint. Even assuming, arguendo, that involuntarily committed mentally ill persons enjoy the same right to treatment as do committed mentally retarded persons, the limited right to treatment announced in *Youngberg* was not implicated in the case at hand. The plaintiff in *Youngberg* was injured on numerous occasions and was physically restrained for significant periods. 457 U.S. at 310–11, 102 S.Ct. at 2455. The Court held that the restraints and injuries were liberty deprivations beyond that involved in the commitment itself and held that minimally adequate treatment to prevent restraint and to provide safe hospital conditions was constitutionally required. *Id.* at 319, 102 S.Ct. at 2459. Conversely, in the case at hand, plaintiff claims that her decedent was granted too much liberty by defendants. There is no valid liberty claim beyond the commitment itself.

The right announced in *Youngberg* has recently been expanded.[5] *See Society for Goodwill to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1250 (2d Cir.1984) (committed mentally retarded persons have a "due process right to training sufficient to prevent self-care skills from deteriorating"). That decision was rendered more than one year after plaintiff's decedent's

discharge and does not support a right to treatment as clearly established at the time of the decedent's discharge.[6] *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738 ("If the law at [the] time [the action occurred] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments."). *See also Stein*, 792 F.2d at 17 ("in *Harlow*, the Court held that in deciding a motion for summary judgment a judge may determine whether the law was clearly established *at the time an action occurred* ")(emphasis added).

Accordingly, plaintiff's motion for summary judgment is granted.

SO ORDERED.

---

**5.** It is not clear with what courts' constitutional doctrine government officials are constructively held to be familiar. The *Harlow* Court suggested a limitation to knowledge of the law of the Supreme Court, the relevant Court of Appeals, and the local district court. 457 U.S. at 818 n. 32, 102 S.Ct. at 2738 n. 32.

**6.** Because the qualified immunity defense must succeed, it is unnecessary to reach the issue of whether plaintiff's allegations of deliberately indifferent conduct by the defendants could withstand summary judgment.