Mary Juanita **SELLERS**,
Plaintiff–Appellant,

v.

**DELGADO COLLEGE**, et al.,
Defendants–Appellees.

No. 89–3129.

United States Court of Appeals,
Fifth Circuit.

May 29, 1990.
Rehearing Denied June 27, 1990.

George M. Strickler, Jr. and Ann Woolhandler, LeBlanc, Strickler & Woolhandler, New Orleans, La., for plaintiff-appellant.

Jeffery M. Lynch and William J. Guste, Jr., Atty. Gen., New Orleans, La., for defendants-appellees.

Before LIVELY,* JOLLY, and HIGGINBOTHAM, Circuit Judges.

* Circuit Judge of the Sixth Circuit, sitting by

**E. GRADY JOLLY, Circuit Judge:**

In this case that is before us for the third time, Mary Juanita Sellers, a successful Title VII claimant, appeals the denial of a back pay award for much of her ten-year post-termination period, which was based upon the magistrate's finding that she failed to mitigate damages. She argues that Delgado College failed to carry its burden to show that she failed to mitigate. We hold that the district court was not clearly erroneous in finding that the evidence showed that Sellers had failed to exercise reasonable diligence to obtain substantially equivalent employment and thus failed to mitigate. We therefore affirm.

## I

### A

The facts and the procedural history antedating this appeal are well-documented in *Sellers v. Delgado College*, 839 F.2d 1132 (5th Cir.1989) (*Sellers II*). Mary Juanita Sellers served as a public relations officer at Delgado Community College from 1975 to February 1978, when she resigned. In 1982, she filed a Title VII action against Delgado, alleging that the college discriminated against her by employing a similarly qualified male in the same position at a higher salary and by discharging her constructively.

The district court referred the case to a magistrate, who tried it by consent of the parties. The magistrate held that Delgado violated Title VII and awarded Sellers damages. On appeal the first time, a panel of this court vacated and remanded the case to the magistrate to clarify the precise legal theory upon which its finding of discrimination was predicated. The court also remanded to clarify the back pay damages award and to consider fringe benefits and prejudgment interest. *Sellers v. Delgado College*, 781 F.2d 503 (5th Cir.1986) (*Sellers I*).

On remand, the magistrate clarified that liability was predicated on the unequal pay

designation.

between Sellers and her male counterpart. Additionally, the court awarded back pay damages, calculated according to the difference between Sellers' salary and that of her male counterpart, from May 1977, when it found that Sellers' and her male counterpart's duties merged, through December 1982, when Sellers resigned a clerical position at Gulf Oil Company; it tolled back pay for the period January 1983 to November 1983, the period following Seller's resignation from Gulf, because it concluded that, by resigning from Gulf, Sellers had failed to mitigate damages; it awarded Sellers back pay for the period November 1983 to July 1984, when Sellers was employed as a biscuit-making instructor at Popeye's, concluding that she had reentered the job market and, thereby, mitigated damages; it again tolled back pay for the period July 1984 to December 1984, the period following her resignation from Popeye's, concluding that, by resigning from Popeye's, Sellers had failed to mitigate; it awarded her back pay for the period after January 1985. Additionally, the magistrate awarded Sellers lost retirement and health benefits less the amount of those benefits earned during the time her back pay was tolled. The magistrate, however, denied Sellers front pay, concluding that Sellers would have attained a public relations position had she remained at Gulf; he also denied her prejudgment interest on her back pay award, concluding that constructive discharge was not a sufficient basis for such an award. Both Sellers and Delgado appealed.

In *Sellers v. Delgado Community College*, 839 F.2d 1132 (5th Cir.1988) (*Sellers II*), we expressed our dissatisfaction with the way the magistrate had fashioned the back pay award and once again vacated and remanded to the magistrate, suggesting that he should reconsider back pay damages from start to finish. Specifically, we held that the magistrate erred in tolling Sellers' back pay for the time following her resignation from Gulf and Popeye's to the extent that back pay was tolled on the basis of her resigning those jobs. We concluded that since a Title VII claimant has no obligation to accept employment that is not substantially equivalent to her prior employment in order to minimize damages, *Ford Motor Company v. EEOC*, 458 U.S. 219, 231 at n. 14, 102 S.Ct. 3057, 3065 at n. 14, 73 L.Ed.2d 721 (1982), she has no duty to remain in such a job. After comparing Sellers' job responsibilities, salary, and promotional opportunities at Delgado with those at Gulf and Popeye's, we reversed as clearly erroneous the magistrate's finding that the positions were substantially equivalent; therefore, failure to mitigate could not be based upon her resigning from these positions.

In a part of our opinion that forms the backdrop of this appeal, we made clear the evidentiary burden of an employer following a finding of discrimination under Title VII. We reiterated that, although a successful Title VII plaintiff has a statutory duty to mitigate damages, the employer must prove that the plaintiff has failed to mitigate; to do so, the employer must demonstrate that comparable work was available and the plaintiff failed to use reasonable diligence to obtain it. 839 F.2d at 1139. Nevertheless, we concluded that, if the employer proves the plaintiff did not exercise reasonable diligence, he need not prove the availability of comparable employment. *Id.* We declined to decide whether Sellers had in fact exercised reasonable diligence. Holding that the magistrate had not made clear whether Delgado had demonstrated Sellers' failure to use reasonable diligence, we remanded the case for specific findings concerning Sellers' mitigation during the entire period after leaving Delgado. *Id.* We vacated the entire damage award and on remand, the magistrate was given discretion to take new evidence and remained "free to make new findings regarding the damage award." *Id.* at 1140.

B

Accordingly, on remand, the magistrate held a further evidentiary hearing on damages, took new evidence and issued new findings of fact and conclusions of law. The magistrate held that, by not exercising reasonable diligence to find substantially

equivalent employment, Sellers had failed to mitigate damages and, therefore, was not entitled to back pay for a substantial part of the period after she left Delgado. The magistrate effectively treated the denial of back pay in four periods. First, for the period February 1978 through February 1981, the magistrate found that Sellers made no attempt to find employment until the latter part of 1978; additionally, the magistrate, after discrediting Sellers' testimony as to her efforts to find employment during this period, cited her minimal response to classified advertisements for substantially equivalent employment, her disregard of employment agencies, and her failure to place advertisements in newspapers and trade journals as evidence of her failure to use reasonable diligence during this time. Second, for the period following her departure from Gulf, January to November 1983, the magistrate cited Sellers' general failure to apply for substantially equivalent jobs, her failure to apply for jobs for which she was qualified, and her failure to contact employment agencies in denying her back pay. Third, for the period July 31, 1984, following her resignation from Popeye's, to December 31, 1984, the magistrate found that Sellers made virtually no effort to find any employment. Finally, for the period from January 1, 1985 until the date of judgment, the magistrate noted that although she had actively pursued employment at times during this period, her failure to exercise reasonable diligence in the preceding years, her pursuit of temporary employment, and resignation from substantial permanent employment had "significantly affected" her ability thereafter to find employment that was substantially equivalent to her job in public relations at Delgado. He therefore denied back pay for the period January 1, 1985, forward.

The magistrate awarded Sellers back pay from February 1981 to December 1982. The magistrate noted that Sellers contacted four employment agencies regarding public relations positions in February 1981, and in July 1981, obtained a permanent secretarial position at Gulf Oil in the hope that she could eventually work her way up to a job in public relations with the company. He cited Sellers' attempts to advance into a public relations, communications, and writing positions with Gulf as the basis for holding that she mitigated damages during this period of employment. The magistrate also awarded Sellers back pay for the time of her employment as a biscuit-making instructor at Popeye's, November 1, 1983 to July 31, 1984, citing her desire to use this position as a "stepping stone" into the company's public relations department and her efforts, in fact, to obtain such a position.

The magistrate denied Sellers front pay, finding that her failure to obtain similar employment in her professional field was caused by her failure to exercise reasonable diligence to secure substantially equivalent employment in the intervening years. Final judgment was entered for Sellers in the amount of $46,876.64 plus costs including prejudgment interest and fringe benefits.

## II

Sellers now appeals the magistrate's denial of back pay for most of the period after she left Delgado and denial of front pay. Sellers argues that the magistrate erred in holding that Delgado carried its burden of proving that she failed to exercise due diligence to find substantially equivalent employment. On the contrary, Sellers argues that the magistrate erroneously placed the burden of proving reasonable diligence on her, in part by refusing to credit her oral testimony that she actively pursued substantially equivalent employment after leaving Delgado in the 1978–1981 period. Sellers also contends that the magistrate erroneously admitted and considered hearsay evidence, in the form of newspaper classified advertisements for substantially equivalent jobs, in concluding that she failed to mitigate.

Delgado argues that the record fully supports the magistrate's finding that it proved Sellers did not exercise reasonable diligence in seeking substantially equivalent employment and, thus, is not entitled to back pay for much of the post-discharge period, nor to front pay. In any event,

Delgado argues that the magistrate's finding is not clearly erroneous and, therefore, should be upheld.

### III

Section 706(g) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(g) provides, in pertinent part: "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..." As we noted in *Sellers II*, however, "back pay is not an automatic remedy, but is equitable in nature and may be invoked in the sound discretion of the district court." 839 F.2d at 1136. Exercise of this discretion is to be guided by the twin purposes of Title VII, which are "to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination." *Floca v. Homcare Health Services, Inc.*, 845 F.2d 108, 111 (5th Cir.1988), citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). Thus, back pay is designed in part to alleviate the "lingering ill effects" of employment discrimination. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 235, 102 S.Ct. 3057, 3067, 73 L.Ed.2d 721 (1982).

■ Successful Title VII claimants, such as Sellers, have a corresponding statutory duty to minimize such damages. *Sellers II*, 839 F.2d at 1136. Section 706(g) of the Civil Rights Act of 1964 provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." This statutory duty is rooted in "an ancient principle of law" requiring that "where one person has committed a ... legal wrong against another it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided." *Ford Motor Co. v. EEOC*, 458 U.S. at 231 n. 15, 102 S.Ct. at 3065 n. 15 (1982), quoting C. McCormick, *Law of Damages* 127 (1935).

■ Yet, the duty of a successful Title VII claimant to mitigate damages is not met by using reasonable diligence to obtain *any* employment. Rather the claimant must use reasonable diligence to obtain "substantially equivalent" employment. *Id.* at 232, 102 S.Ct. at 3066; *Sellers II*, 839 F.2d at 1138. The reasonableness of a Title VII claimant's diligence "should be evaluated in light of the individual characteristics of the claimant and the job market." *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 624 (6th Cir.1983). "Substantially equivalent employment" is that "employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Sellers II*, 839 F.2d at 1138. Ultimately, as we noted in *Sellers II*, "[t]he determination of whether or not a Title VII claimant uses reasonable diligence in obtaining substantially comparable employment is a determination of fact by the district court which is subject to the 'clearly erroneous' standard of Fed.R.Civ.P. 52(a)." *Id.*

■ Although the statutory duty to minimize damages is placed on the Title VII plaintiff, the employer has the burden of proving failure to mitigate. *Id.* at 1139. To meet this burden, an employer may demonstrate that substantially equivalent work was available and that the Title VII claimant did not exercise reasonable diligence to obtain it. *Id.* In *Sellers II*, however, we held that "if an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment." *Id.*

■ As we have noted, we must approach our review of this case aware that

the district court's findings on mitigation of damages are subject to a clearly erroneous standard of review, and we may not substitute our judgment for that of the trier of fact. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

## IV

■ At the outset of our analysis, we should emphasize that in our previous opinion, we made clear that Delgado's liability for back pay was tied to Sellers' right, not just to another job, but the right to a job substantially equivalent to the one from which she was discharged. Since the claim for damages in this case is therefore based on Sellers' failure to obtain substantially equivalent employment, the focus of our mitigation inquiry is necessarily whether she exercised reasonable diligence to obtain *substantially equivalent employment,* not any other employment.

We therefore turn now to review the magistrate's finding that Delgado proved that, except for her time at Gulf and Popeye's, Sellers failed to exercise reasonable diligence to obtain substantially equivalent employment after being constructively discharged by Delgado in February 1978. Af-

ter reviewing the entire record, we hold that the magistrate's finding that Delgado proved Sellers failed to mitigate damages is not clearly erroneous.

### A

Our review begins with the period immediately following Sellers' discharge from Delgado. We note that it was especially important that the relatively inexperienced[1] Sellers actively seek employment during this time. This is true because the longer she separated herself from her newly acquired professional skills, the more difficulty she would have persuading prospective employers to accept her as a qualified professional. Notwithstanding this obvious danger to her professional status and marketability, the credited evidence in this case supports a finding that for the period, after leaving Delgado on February 14, 1978 until February 1981, Sellers did not actively pursue substantially equivalent employment. Indeed, based on the credited evidence, she hardly sought any employment at all.

In 1978, Sellers submitted only three job applications for the entire year.[2] She did not file her first application until October.

In 1979, Sellers did little better. For the entire year, Sellers submitted only nine job applications, two of which the magistrate found were for jobs she was clearly not qualified for by training and experience.

---

**1.** Sellers' previous employment in the public relations field included only an internship at Louisiana State University. It was not until July 1978, after her constructive discharge, that Sellers completed the requirements for a Masters degree in Journalism.

**2.** At the hearing on remand after *Sellers II,* Sellers testified that the written applications and rejection letters she offered in evidence for 1978 represent only some of those she actually made and received that year; that she tore and burned a batch of the remaining ones because some of her friends suggested that retaining them was "very depressing." The magistrate, however, refused to credit Sellers' testimony on this one issue, finding that it "border[ed] on the ludicrous" in the light of her "almost compulsive retention of documentation relating to the events preceding and following her resignation

from Delgado." He also cited other inconsistencies in her testimony in support of this decision.

As one ground of her appeal, Sellers argues that, in refusing to credit her testimony concerning the destroyed documents and citing her lack of credibility as a factor in his decision that she failed to mitigate damages, the magistrate disregarded *Floca v. Homcare Health Services, Inc.,* 845 F.2d 108 (5th Cir.1988). Sellers, however, reads *Floca* too broadly. *Floca* does not ban reliance upon the credibility of a Title VII claimant in deciding whether the employer carried its burden of proof regarding mitigation. In *Floca,* we held that rejection of plaintiff's credibility alone is insufficient to meet defendant's burden of proof. 845 F.2d at 112. Here the record contains ample other evidence to support the magistrate's finding of lack of diligence. See *Infra.* Therefore, his decision is not contrary to our holding in *Floca.*

Her only employment consisted of working as a substitute teacher for the Jefferson Parish School Board in the fall of 1979, and as a short-term temporary clerical worker.

In 1980, Sellers put forth her best effort to that date to find some permanent employment. She submitted approximately fifteen applications for new jobs. The magistrate found, however, that she applied for some jobs, such as paralegal and a staff assistant to design and implement an accounting system, for which she clearly was not qualified by training and experience, and consequently were not substantially equivalent to her job at Delgado. Sellers was temporarily employed by a business consulting firm to assist in a congressional campaign, by a hotel as a sales associate, and by another private company.

Over this three-year period, then, Sellers averaged less than one job application per month. In 1978, and 1979, months passed without Sellers submitting any job applications for permanent employment, much less employment that was in her professional field. Sellers also failed to contact employment agencies. In short, the record supports the magistrate's finding that Sellers was not reasonably diligent in pursuing substantially equivalent employment.

The finding that Sellers did not exercise reasonable diligence to obtain substantially equivalent employment is further supported by her minimal response to the large number of advertisements for substantially equivalent jobs that appeared during this time. At the hearing upon remand after *Sellers II*, Delgado introduced copies of approximately 290 classified advertisements from the Sunday *New Orleans Times–Picayune*.[3] Many of these advertisements were for positions in the public relations, writing, and communica-

tions fields. The magistrate found that Sellers answered only two of these advertisements.[4]

Our review of the record indicates that Sellers responded to at least eight of the 290 advertisements submitted into evidence by Delgado: two in 1978, two in 1979, one in 1980, two in 1981, and one in 1982. These limited responses, however, do not make clearly erroneous the magistrate's general finding that there were "a significant number" of advertisements for substantially comparable jobs to which Sellers did not respond.

B

We turn now to the second period for which the magistrate denied Sellers back pay, January 1983, after she left Gulf Oil, to November 1983. We hold that the magistrate's finding that Delgado also proved Sellers failed to mitigate during this period is not clearly erroneous. The magistrate found that Sellers again failed to apply with any employment agencies; he also found that, although Sellers submitted twenty-three job applications in 1983, she was not qualified for some of these positions—such as a paralegal, the Budget Director of the City of Boulder, Colorado Fire Department, a job in life insurance, and a position in training and personnel management at the Federal Reserve Bank in New Orleans—because of lack of experience.

Although it is certainly true that in submitting, over an eleven-month period, nineteen job applications for employment that were arguably substantially equivalent to her job at Delgado, Sellers displayed more diligence than at any other time in the five years since being discharged by Delgado, we cannot conclude that the magistrate clearly erred by holding that she failed to

---

3. Delgado also introduced for the period February 2, 1986 to February 28, 1988, 150 classified advertisements from a newspaper in Austin, Texas, where Sellers resided from January 1986 to the time of the hearing.

4. Sellers objected to the admission of these advertisements on the ground of hearsay, arguing that the advertisements tended to suggest that comparable employment was available. We hold that the magistrate did not abuse his dis-

cretion in admitting the evidence: Sellers testified that after leaving Delgado in 1978, she regularly read the classified advertisements in the New Orleans Sunday newspaper and pursued jobs advertised therein. In the light of her testimony, Delgado's offer of proof was clearly relevant to whether Sellers exercised reasonable diligence in seeking substantially equivalent employment.

use reasonable diligence to obtain substantially equivalent employment when she submitted less than two applications per month. In further support of this conclusion, we note that by 1983, almost five years after leaving Delgado, Sellers had a record of failing diligently to pursue employment in her professional field and failing to maintain a history of some permanent employment.[5]

### C

Third, we also uphold the magistrate's determination that Sellers is not entitled to back pay for the period July 31, 1984 to December 31, 1984. The record indicates that, during this time, Sellers filed only two job applications and did not register with any employment agencies. Thus, during this period, Sellers effectively removed herself from the job market and continued to become less and less employable in a substantially equivalent job because she was doing nothing to maintain her professional skills.

### D

Finally, we affirm as not clearly erroneous the magistrate's finding that Sellers failed to mitigate and, therefore, is not entitled to back pay for the period from January 1, 1985 to the present. The record indicates that Sellers filed no job applications during six of the twelve months in 1985. Although the record indicates that she increased her efforts to obtain comparable employment in 1986 and 1987 by filing applications and conducting extensive job searching, we conclude that the magistrate was not clearly erroneous in finding that at this late date, at least eight years after leaving Delgado, Sellers' prior record of failure to exercise reasonable diligence to obtain and maintain steady employment had virtually eliminated her professional marketability. Sellers' own expert witness confirmed this conclusion by testifying in

May 1986 that her "diluted" work experience had hindered her in obtaining comparable employment.

### V

■ In view of the magistrate's finding of fact that Sellers did not exercise reasonable diligence to obtain substantially equivalent employment and his conclusion that she was consequently not entitled to back pay for most of the period after she left Delgado, we uphold the magistrate's denial of front pay. Front pay "is a remedy for the postjudgment effects of discrimination. It compensates the plaintiff for lost income from the date of the judgment to the date the plaintiff obtains the position she would have accepted but for the discrimination." *Floca,* 845 F.2d at 112. In *Sellers II,* we held that "the decision to award or deny front pay is a discretionary one, resting with the district court." *Id.*

The magistrate denied Sellers front pay because he concluded that her failure to advance to the position she would have achieved but for the discrimination resulted from her failure to actively and consistently seek comparable permanent employment following her departure from Delgado, her pursuit of temporary employment, and her resignation from substantial permanent employment. Because we agree with the magistrate that Sellers' lack of reasonable diligence, not Delgado's discrimination, accounts for her present failure to obtain substantially equivalent employment, we uphold the denial of front pay.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**5.** Until she obtained employment at Popeye's in November 1983, Sellers' only full-time job after leaving Delgado was her secretarial position at Gulf. Although the magistrate found on remand that Sellers mitigated damages by working at Gulf, this finding was based on his determination that she had sought to advance into a public relations position there, not that her actual work at Gulf was substantially equivalent to the position she held at Delgado.