Rickey **HILL**, Plaintiff–Appellee,

v.

**CITY of PONTOTOC, MISSISSIPPI, et al., Defendants,**

**City of Pontotoc, Mississippi, Defendant–Appellant.**

No. 92–7337.

United States Court of Appeals, Fifth Circuit.

June 2, 1993.

Gary E. Friedman, Susan D. Fahey, Phelps Dunbar, Jackson, MS, for defendant-appellant.

Jim Waide, Luther C. Fisher, IV, Tupelo, MS, for plaintiff-appellee.

Before KING, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Former city fire chief Rickey Hill sued the City of Pontotoc, Mississippi, claiming the City fired him without due process. A jury found for Hill and the district court awarded back pay and front pay, in lieu of reinstatement. The City appeals and we affirm.

## I

The City of Pontotoc, Mississippi, hired Rickey Hill as a firefighter in 1978 and promoted him to fire chief in 1986. As fire chief, Hill supervised fireman Lindsey Sparks. Hill clashed with Sparks, reporting to City officials that Sparks was dishonest and unreliable. The City transferred Sparks to its gas department in 1989. Six months later, on May 2, 1990, Sparks returned to the fire department to fill a vacancy. There was immediate trouble. A fight broke out at city hall between Sparks and Hill. Hill claims that Sparks started the fight by first insulting and then physically attacking him. Hill maintains that he struck back in self defense.

The mayor witnessed the fight before it was broken up.

Within a week, the City's Board of Aldermen discussed discharging Hill and Sparks. Upon advice of counsel, the Board notified both men of a hearing to determine disciplinary action regarding the "incident." At the hearing, Hill presented his version of the fight. An alderman then questioned Hill about the attitude of the department and how well Hill got along with volunteer firemen. Hill replied that he got along fine with them. The alderman stated at the hearing that Hill's ability to get along with the volunteers concerned him and would have a bearing on his decision. Sparks was, of course, a city employee, not a volunteer fireman. The Board excluded Hill from the hearing while Sparks spoke. Sparks claimed that Hill had terrorized Sparks' family and set a fire at their home. After hearing Hill and Sparks, the Board voted to fire them both. The alderman testified at trial that volunteers had complained to him about Hill. Hill testified that he was unaware of any problems with the volunteers. Hill stated that he could have rebutted these charges if he had been notified of them.

Hill sued the City and Board members alleging a denial of due process and that his discharge violated the terms of the City's Handbook. In November 1991, District Judge Davidson granted a partial summary judgment in favor of defendants and delineated the issues remaining for jury trial.

Judge Davidson granted summary judgment to the City on Hill's state law claim.[1] The court found that the City had a justifiable reason for discharging Hill, regardless of Hill's assertion of self-defense. Specifically, Judge Davidson found that the Handbook's "unbecoming conduct" basis for discharge encompassed fighting; Hill has not appealed this ruling.

The parties then agreed to try the case before Magistrate Judge Davis. The court denied the City's request for an *in limine* ruling to prevent Hill from asserting that self defense would excuse the fighting or that a

fair hearing would not have resulted in his discharge. The magistrate judge dismissed any substantive due process claim on the basis of Judge Davidson's summary judgment ruling that fighting was a legal basis for discharge under state law.

Hill argued at trial that the City denied his procedural due process right to confront and answer witnesses by failing to give him notice of all of its charges. The jury agreed, finding that in discharging Hill the Board had relied on charges other than fighting. The jury awarded Hill damages for lost income, after being instructed that it could "take into account" whether Hill "would not have been terminated had he been granted his due process rights."

Following trial, the district court denied JNOV but reduced the jury's compensatory damages award from $37,000 to $30,000. Hill agreed to this amendment, conceding that the jury's damage calculation failed to subtract $7,000 of earnings from other work. The district court denied reinstatement persuaded that Hill's return would unduly disrupt the Pontotoc Fire Department, awarding four years of front pay totalling $103,-704.00.

## II

■ The City complains on appeal that Magistrate Judge Davis violated the law of the case doctrine by allowing Hill to challenge the outcome of his procedurally deficient hearing. According to the City, Judge Davidson's finding that the City had a justifiable reason for discharging Hill foreclosed a jury determination that he would not have been terminated if he had notice of other charges.

It is not evident that Judge Davidson's pretrial ruling foreclosed the trial of causation to the jury. Judge Davidson focused on the contract issue posed by the Handbook, and found that fighting provided an allowable basis for discharge. "[T]he handbook gave the board the authority to terminate" Hill under state law. Judge Davidson did not find that the Board fired Hill solely for fight-

---

1. The district court also granted summary judgment to defendants in their individual capacities on immunity grounds.

ing. The jury did not contradict Judge Davidson's rulings, but held that the Board considered charges other than fighting in reaching its decision.

Ordinarily, judges of coordinate jurisdiction will defer to another's interlocutory ruling. *See* 18 Charles A. Wright, et al., *Federal Practice & Procedure* § 4478 (1981). The rule is deference not obedience. The utility of deference yields to adequate reason. This flexibility also accommodates the reality that the predecessor judge could always have reconsidered before judgment. *Loumar v. Smith,* 698 F.2d 759, 762 (5th Cir.1983). The City persists that magistrate judges ought not be allowed to reconsider or alter the decision of a presiding district judge not only under the law of the case doctrine but to implement its role as adjunct to the Article III judge. *See Taylor v. National Group of Companies, Inc.,* 765 F.Supp. 411, 413–14 (N.D.Ohio 1990). We need not answer this contention because the more direct answer is that Magistrate Judge Davis's rulings were consistent with Judge Davidson's summary judgment decision.

### III

■ The City contends that because Hill's claim was based solely on procedural due process, he may recover only nominal damages. *Carey v. Piphus,* 435 U.S. 247, 263, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). A plaintiff seeking damages for a procedural due process violation must show that his injuries resulted from the denial of due process itself, and not from a corresponding justifiable deprivation. *Id. Carey* held that a plaintiff who failed to prove such injuries could receive only nominal damages, *id.* at 267, 98 S.Ct. at 1054; it did not proscribe compensatory damages caused by the denial of due process. *Id.* at 263–64, 98 S.Ct. at 1052–53.

In challenging the award of back pay to Hill, the City misrelies upon cases such as *Simien v. City of San Antonio,* 809 F.2d 255 (5th Cir.1987), and *Laje v. R.E. Thomason Gen'l Hospital,* 665 F.2d 724 (5th Cir.1982). In these cases the terminations were with

either no hearing or an insufficient one, followed by affirmation at a hearing comporting with due process requirements. It was in that context that we held that plaintiffs may not recover back pay, even for the period between the deprivation and the validating hearing. *See Simien,* 809 F.2d at 258; *Laje,* 665 F.2d at 730; *Wilson v. Taylor,* 658 F.2d 1021, 1035 (5th Cir.1981); *but see Wheeler v. Mental Health & Mental Retardation Authority,* 752 F.2d 1063, 1070 (5th Cir.) (holding that back pay for period between infirm procedure and proper post-discharge hearing may be awarded), *cert. denied,* 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985).[2] Hill had one hearing, and it failed to comport with due process. The City never provided Hill with a constitutionally sufficient hearing.

The students in *Carey* were suspended without notice and an opportunity to be heard. *Carey* implicitly endorsed the causation inquiry, submitted in this case:

> [T]he Court of Appeals held that if petitioners can prove on remand that "[respondents] would have been suspended even if a proper hearing had been held," then respondents will not be entitled to recover damages to compensate them for injuries caused by the suspensions. The court thought that in such a case, the failure to accord procedural due process could not properly be viewed as the cause of the suspensions. The court suggested that in such circumstances, an award of damages for injuries caused by the suspensions would constitute a windfall, rather than compensation, to respondents. We do not understand the parties to disagree with this conclusion. Nor do we.

*Id.* 435 U.S. at 260, 98 S.Ct. at 1050 (citations omitted).

■ An employer may defend a denial of due process with proof that the employee would in any event have been fired. *See Wheeler,* 752 F.2d at 1071; *Laje,* 665 F.2d at 729–30. As the Eighth Circuit put it:

> The complained-of constitutional violation is the denial of procedural due process, not the plaintiff's discharge from public em-

---

**2.** Because this case presents a different context, we express no opinion on the apparent tension

between *Wheeler* and the decisions in *Simien, Laje,* and *Wilson.*

ployment. Damages therefore must be limited to those caused by the due process violation. This will include a full award of back pay only when there is a finding that the discharge would not have occurred if the employee's procedural due process rights had been observed.

*Brewer v. Chauvin,* 938 F.2d 860, 864 (8th Cir.1991) (en banc) (footnotes omitted). *Brewer* reversed an award of back pay because the trial court made no finding of causation. The court held that if the plaintiff was fired "without proper justification"— meaning he would not have been discharged had his procedural rights been observed— then the back pay award should be reinstated. *Id.* at 865. *See also Stein v. Board of City of New York,* 792 F.2d 13, 18–19 (2d Cir.) (plaintiff discharged without adequate notice may receive back pay if jury rejects claim that plaintiff would have been fired even if procedural rights had been observed), *cert. denied,* 479 U.S. 984, 107 S.Ct. 572, 93 L.Ed.2d 576 (1986).

■ Hill has established that the City's denial of his procedural due process caused his loss of pay. The jury found that the Board of Aldermen did not give notice to Hill of the misconduct for which he was fired. The jury also found that had Hill's procedural due process rights been observed, that is, had Hill been given a fair opportunity to answer those charges, the City would not have fired Hill. The district court here erroneously placed the burden of proof on causation on the plaintiff, a harmless error since the jury nonetheless found in Hill's favor.

■ For the first time at oral argument, the City questions whether reinstatement and front pay, its surrogate, are appropriate remedies for a purely procedural due process violation. Some courts have held that they are not. *See, e.g., Brewer,* 938 F.2d at 863; *Patterson v. Portch,* 853 F.2d 1399, 1408 (7th Cir.1988); *Brady v. Gebbie,* 859 F.2d 1543, 1552 (9th Cir.1988), *cert. denied,* 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989). Their basic premise is that it would be futile to reinstate an employee who can be given due process and fired again. The City did not make this argument below; it challenged front pay solely on the basis that Hill was

entitled to no more than nominal damages. We do not suggest the theory could apply here, given the jury's finding that reasons other than fighting were considered by the Board. Rather, we decline to express an opinion on this issue. *See Capps v. Humble Oil & Refining Co.,* 536 F.2d 80, 82 (5th Cir.1976) (noting that court generally will not rule on issues not presented to the district court).

## IV

■ The City contends that Hill is otherwise not entitled to damages because it proved that he failed to mitigate his damages after discharge. The City notes that Hill applied for only two positions during the two years after his termination. An employee fired without due process has a duty to mitigate his injury. *See Reeves v. Claiborne County Bd. of Educ.,* 828 F.2d 1096, 1101 (5th Cir.1987); *Kingsville Indep. School Dist. v. Cooper,* 611 F.2d 1109, 1114 (5th Cir.1980); *see also Harkless v. Sweeny Indep. School Dist.,* 427 F.2d 319, 324 (5th Cir.1970) (holding that back pay awards are diminished by earnings in the interim). If a defendant proves that other employment was available and not diligently sought, there can be no award of back pay. *Reeves,* 828 F.2d at 1101 (citing *Sparks v. Griffin,* 460 F.2d 433, 443 (5th Cir.1972)).

■ The City asserts that Hill's two applications for firefighting jobs was not a reasonable effort to obtain work, citing *Sellers v. Delgado College,* 902 F.2d 1189 (5th Cir. 1990). In *Sellers,* we affirmed a district court's denial of back and front pay to a constructively discharged employee who failed to make reasonable efforts to find substantially equivalent work. *Id.* at 1195–96. *Sellers* did not create, as the City suggests, a legal threshold for measuring the duty to mitigate injury.

The jury was instructed to consider whether Hill had mitigated his damages by seeking employment that could have substantially compensated him. The evidence showed that after his discharge, Hill applied for work with the Tupelo, Mississippi, Fire Department and the Pontotoc County 911 emergency call system. Tupelo had no openings, and

Hill discovered that he could not take a job with the 911 system because he served on the 911 Committee. While Hill was fire chief and afterward, he held the part-time position of County Fire Coordinator, earning $500 per month. Hill testified that he made no other job applications, because full-time work or work outside Pontotoc County would cause him to lose his part-time job with the County. Instead, Hill then pursued an auto repair business of his own. In 1991, he earned approximately $7,000 in this business. The record does not reflect alternative employment.

▮ Whether an injured person has mitigated his damages requires a factual assessment of the reasonableness of his conduct. *See Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465, 1476 (5th Cir. 1991). Self-employment may be a reasonable alternative to seeking other employment for purposes of mitigation. *Carden v. Westinghouse Electric Corp.*, 850 F.2d 996, 1005 (3d Cir.1988) (ADEA case). The jury did not reduce its award of damages by the amount Hill could have received from other work, although it was instructed to do so if it found that Hill failed to mitigate. Instead, the jury awarded $37,000, representing the entire amount of lost income. Following the mitigation rule stated in *Harkless*, 427 F.2d at 324, the district court with plaintiff's consent reduced that award to represent Hill's interim earnings of $7,000 from self-employment. We are not persuaded that we must further disturb the jury's determination of the mitigation issue.

## V

▮ Finally, the City asserts that a new trial is warranted because Hill placed prejudicial information before the jury in violation of *in limine* rulings. Specifically, the City points to references to Sparks' instability and Hill's testimony that he acted in self defense. The City objected to these references and the district court responded with cautionary instructions to the jury. The City presented this claim to the district court in its motion for new trial. Having reviewed the record, we find that the district court did not abuse its discretion in denying the motion. *See*

*Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 781 (5th Cir.1983).

AFFIRMED.