**Jill L. HASBROUCK, Plaintiff,**

v.

**BANKAMERICA HOUSING SERVICES, INC. a DIVISION OF BANK OF AMERICA FSB and Phil Tullgren, Defendants.**

**No. 98–CV–10 (NPM/GLS).**

United States District Court,
N.D. New York.

July 31, 2000.

DeLorenzo, Pasquariello & Weiskopf, P.C., Schenectady, NY (Thomas E. DeLorenzo, of counsel), for plaintiff.

Nixon, Peabody LLP, Albany, NY (Andrew C. Rose, of counsel), for BankAmerica, defendant.

Dreyer Boyajian LLP, Albany, NY (Daniel J. Stewart, of counsel), for Tullgren, defendant.

## MEMORANDUM–DECISION AND ORDER INTRODUCTION

McCURN, Senior District Judge.

Presently before the Court are defendants Bank America ("BA") and Phil Tullgren's motions for summary judgment. Plaintiff opposes the motions.

## BACKGROUND

Plaintiff brings suit against defendants pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII), and New York Executive Law ("HRL") alleging sexual harassment and discrimination.[1] She seeks to hold defendants liable for offensive behavior purportedly committed by Tullgren throughout the entire time she was employed at BA, from late 1994 through 1997, and for her discharge in 1997. The following facts are taken in the light most favorable to plaintiff.[2]

In October of 1994, plaintiff was hired as a remarketing manager of repossessed trailer homes, in BA's Albany, New York office. She was promoted in early 1995, and given the additional duties of collection manager. In late 1995, she was again promoted, this time to be group operations and customer service manager. In April of 1997, she accepted a transfer to an account executive position, basically a sales person, with an incentive compensation plan. Plaintiff claims that this position was a demotion, but that she took the position to physically get out of the office and away from her supervisor, Tullgren. In June of 1997, two of plaintiff's accounts were taken away, allegedly as a result of Tullgren's harassment.[3] In late June of 1997, plaintiff was discharged, allegedly under the pretext of corporate downsizing. She was the only account executive discharged; she claims the male account executive retained was less qualified, and that she was discharged for discriminatory reasons, including rebuffing Tullgren's harassment.

For the entire time plaintiff was employed by BA, Tullgren was her immediate supervisor. Plaintiff claims that during this two and a half year period, Tullgren subjected her to constant and continuous sexual harassment. This harassment is detailed in plaintiff's affidavit in opposition and EEOC affidavit. BA and Tullgren deny that any harassment took place, or that it was sufficient to state a cause of action for hostile work environment.

The alleged harassment by Tullgren consisted of the following:

a) statements that plaintiff "needed to do whatever it takes to get the business;"

b) statements that "middle aged women do not understand men;"

c) requests for plaintiff to wear "short-shorts" or "sexy" clothing;

d) pressure to dress inappropriately, "dress risque" and act "seductively" in order to obtain business;

e) a request that plaintiff work her magic and act and dress seductively during the visit of a corporate higher-up;

f) remarking to plaintiff that he was sure everyone thought they were sleeping together;

g) his questions regarding her sex life, and statements that it was his right to know who she was sleeping with;

h) a request to show him her bra; and statement that to advance, she needed to "show more tit;"

i) informing plaintiff it turned him on when she wore her hair up;

j) telling another female coworker that "Jill must be a fantastic fuck;"

---

**1.** BA appears to maintain that this action is purely for a hostile work environment. *See* BA's Mem. of Law at 6 n. 6 ("The only claim articulated in plaintiff's pleading is one for hostile work environment harassment. Complt.[sic] ¶¶ 25–26."). This court's own reading of the complaint, however, reveals that plaintiff brings discrimination claims as well. *See* Compl. at ¶¶ 22–23. As BA has not moved for summary judgment on these claims, the court does not discuss them further in this decision.

**2.** Defendants, of course, dispute many of these facts.

**3.** Another account was taken in April of 1997. This account is not at issue here, as it is clear the decision to take the account was not made by Tullgren. The two accounts allegedly taken from plaintiff in June, however, play a pivotal role in BA's motion, as it appears from the facts before the court that Tullgren himself may have made the decision.

k) offensively touching her on a business trip, including grabbing her and dragging her to a bar, forcing her to dance with him after she refused, trying to feel her breast(s) on the dance floor, and throwing himself across her lap (and other employees, in a car);

l) swearing at her one time when she refused to go drinking with him;

m) stroking and fondling her hair; and

n) ordering her to accompany male clients to topless bars.

*See* Pl.'s Aff. at ¶ 10; EEOC Aff. at ¶¶ 6–8.

From the moment she began at BA, however, plaintiff was thoroughly familiar with BA's policy against harassment in the workplace, and several avenues of complaint available to employees.[4] Despite her allegedly ongoing harassment, plaintiff never complained about her job to anyone—until she became angry with BA for reassigning one of her accounts to another account executive, in April of 1997.[5] When she called human resources about her account being taken away, plaintiff claims she complained of Tullgren's harassment.

Though plaintiff was specifically instructed to put her complaint in writing, and told the complaint would be investigated confidentially, she never did so. She admits that other than the phone call described above, she never reported any sexual harassment to any BA manager, other than complaining to Tullgren himself.[6]

See Pl.'s Dep. at 107–08. Indeed, when she tried to enlist another female employee of BA to help her build a case of sexual harassment, that employee recommended plaintiff complain to BA's human resources office, but plaintiff told her she would not.

Plaintiff claims that two other accounts were taken from her in June of 1997, and shortly thereafter, she was fired. She claims that BA's downsizing decision was pretext for discrimination. She also now claims, for the first time, that the two accounts taken from her in June and her discharge were illegal retaliation for her attempt to complain about Tullgren.[7]

Finally, plaintiff comes forward, at most, with proof that she sought to mitigate her damages by seeking a job for three months after she was fired by BA. She then took a job with another bank, which she voluntarily left in June of 1998. She has come forward with no proof, however, that she has sought out alternate employment since that time period. It is thus clear that at least since June of 1998, plaintiff has failed to mitigate her damages.

Defendants now move for summary judgment. BA primarily contends that plaintiff's hostile work environment claim is barred by the new affirmative defense created by the Supreme Court in *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and

---

4. In the interests of brevity, the court does not discuss in detail her knowledge of complaint procedures. The court agrees with defendants that on the record before it, plaintiff was well aware of BA's policies about sexual harassment, and that she unreasonably failed to complain. Nonetheless, as discussed below, her unreasonable failure to complain is not dispositive.

5. Plaintiff now admits that she was engaged in a romantic relationship, including sexual relations, with the client whose account was taken away. *See* Pl.'s Dep. at 66–67. Though it was Tullgren who informed her of the decision to take the account, it is uncontested that Tullgren did not make the decision; rather, it was made by other high ranking managers, due to a real or perceived conflict of interest.

These managers included Division Manager Stephan Turman, BA Vice President and head Human Resources Officer Shirley Dahlberg, and Human Resources Consultant Charlotte Carrao. *See* Turman Aff. at ¶¶ 6–7; Dahlberg Aff. at ¶¶ 2–5; Carrao Aff. at ¶¶ 8–9 and Tullgren Aff. ¶¶ 12–13.

6. Tullgren denies that plaintiff ever complained or confronted him about his conduct.

7. As BA properly notes, however, plaintiff has not plead retaliation in her complaint. *See* BA's Reply Mem. of Law at 7 n. 4. Nor, for that matter, has plaintiff ever amended her complaint, or moved to amend her complaint. Plaintiff may not bring a retaliation claim at this late date.

*Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). BA alternatively contends that plaintiff's hostile work environment claim fails because the conduct alleged was not sufficiently severe and pervasive. Last, BA argues that plaintiff failed to mitigate her damages, and is consequently barred from seeking front and back pay.

Tullgren contends that he is not a proper defendant in either a Title VII or HRL claim. He also agrees with BA that plaintiff's allegations of harassment, if true, are not sufficient to state a hostile work environment claim. These arguments are discussed below.

### DISCUSSION

The principles that govern summary judgment are well established. Summary judgment is properly granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must draw all factual inferences and resolve all ambiguities in favor of the non-moving party. *See Torres v. Pisano,* 116 F.3d 625, 630 (2d Cir.1997). As the Circuit has recently emphasized in the employment discrimination context, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." *Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 54 (2d Cir.1998). Rather, there must be either an absence of evidence that supports plaintiff's position, *see Norton v. Sam's Club,* 145 F.3d 114, 117–20 (2d Cir.1998), "or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer,* 151 F.3d at 54. With these principles in mind, the court turns to defendants' motions.

### A. Applicability of the Affirmative Defense Under *Burlington/Faragher*

■ In contrast to allegations of harassment by co-workers or customers, employ-ers are subject to vicarious liability "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *accord Richardson v. New York State Dep't of Corr. Servs.,* 180 F.3d 426, 441 (2d Cir.1999); *Leopold v. Baccarat, Inc.,* 174 F.3d 261, 268 n. 5 (2d Cir.1999); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 767 (2d Cir.1998). The employer's strict liability for the acts of its supervisor may be avoided, however, in cases where the supervisor's harassment did not result in a tangible employment action taken against the plaintiff-employee. *See Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 294 (2d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000); *Leopold,* 174 F.3d at 268 n. 5. In *Faragher* and *Burlington,* the Supreme Court set forth the contours of the affirmative defense that an employer may raise in cases where an employee seeks to hold his or her employer strictly liable for the acts of the employee's supervisor:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher,* 524 U.S. at 808, 118 S.Ct. 2275; *Burlington,* 524 U.S. at 765, 118 S.Ct. 2257 (citations omitted).

As the Supreme Court has emphasized, however, "[n]o affirmative defense is available [ ] when the supervisor's harassment culminates in a tangible employment ac-

tion." *Faragher*, 524 U.S. at 808, 118 S.Ct. 2275. Thus, in cases such as the one presented here, the court must determine at the outset whether the supervisor's conduct constitutes a tangible employment action. It is this initial aspect of the defense which proves fatal to BA's arguments.

As a general rule, a tangible employment action will typically occur in cases where the supervisor, "acting with the authority of the company," makes an employment decision that "*inflicts direct economic harm*" on the employee. *Burlington*, 524 U.S. at 762, 118 S.Ct. 2257 (emphasis supplied).

Such tangible employment action includes, *inter alia*, "a significant change in [the plaintiff-employee's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761, 118 S.Ct. 2257.

Based on these factors, the court has little hesitation finding that Tullgren's removal of two of plaintiff's accounts in June of 1997 would constitute tangible employment action, if true. Plaintiff's allegations of same, in her complaint, EEOC charge, and diary [8] were ignored by BA in making its initial motion and arguments. In BA's reply memorandum of law, it summarily dismisses this issue in less than a single paragraph, despite plaintiff's allegations in her affidavit in opposition, and arguments in her memorandum of law. *See* BA's Reply Mem. of Law at 7. BA spent voluminous effort showing that the account taken in April of 1997 was the result of a decision by corporate-higher ups, breaking Tullgren's link to tangible employment action as to that account. None of the affidavits BA presented as to the April account, however, discussed the June accounts. Thus, plaintiff's allegations as to the June ac-

counts are not just an issue of fact, but remain unrefuted.

BA's own witnesses testified that plaintiff's position as an account executive was "typically a much-sought-after job because it presented greater potential for financial rewards (*i.e.,* bonuses and company car allowance)[.]" Stalcup Aff. at ¶ 6. *Accord* Turman Aff. at ¶ 5 ("a position ... which held greater prospects for financial rewards than her prior position"). As sales positions had greater financial rewards because of either a bonus or commission structure, the loss of plaintiff's June accounts could have had a very real tangible effect on her earnings. This is exactly the type of tangible employment action envisioned by the Supreme Court as an exception to the affirmative defense, as Tullgren may have "inflicted direct economic harm" upon plaintiff. *Burlington*, 524 U.S. at 762, 118 S.Ct. 2257. The affirmative defense BA seeks, consequently, is inappropriate at this juncture.

**B. Actionable Hostile Work Environment** [9]

In *Harris v. Forklift Systems,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court stated that in order to succeed, a hostile work environment claim must allege conduct which is so "severe or pervasive" as to create an " 'objectively' hostile or abusive work environment," which the victim also "subjectively perceive[s] ... to be abusive." *Richardson*, 180 F.3d at 436 (alteration in original) (quoting *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367). From this court's review of the record, there is no dispute that plaintiff viewed her environment to be hostile and abusive; hence, the question before the court is whether the environment was "objectively" hostile. *See id.* Plaintiff's "allegations should thus be evaluated to determine whether a reasonable person who is

---

**8.** Part of the record on this motion, *see* Rose Aff. Ex. 11 P (entries 6/17/97 & 6/18/97), and sworn as to its accuracy and completeness, *see* Pl.'s Dep. at 103.

**9.** The standards for Title VII and HRL hostile work environment claims are virtually identical, and as such, the court does not distinguish between them.

the target of discrimination would find the working conditions so severe and pervasive as to alter the terms and conditions of employment for the worse." [10]  *Id.* (citing *Harris,* 510 U.S. at 21, 114 S.Ct. 367).

Conduct that is "merely offensive" and "not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive— is beyond Title VII's purview." *Harris,* 510 U.S. at 21, 114 S.Ct. 367. Moreover, a plaintiff alleging sexual harassment must show the hostility was based on membership in a protected class. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 77, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Thus, to succeed on a claim of sexual harassment, a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion] . . . because of . . . sex." *Id.* at 81, 118 S.Ct. 998 (alteration and ellipses in original).

The Supreme Court has established a non-exclusive list of factors relevant to determining whether a given workplace is permeated with discrimination so severe or pervasive as to support a Title VII claim. *See Harris,* 510 U.S. at 23, 114 S.Ct. 367. These include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted. from the conduct. *See id.; Richardson,* 180 F.3d at 437.

Defendants claim that the conduct of which plaintiff complains, if true, "although admittedly unbecoming, fall[s] far below the 'severity' threshold established by the courts." BA's Mem. of Law at 22.

Having considered BA's voluminous brief, the court agrees that it is a close call as to whether plaintiff has alleged conduct sufficiently severe or pervasive to make out a claim under Title VII or the HRL. Nonetheless, as noted in *Richardson,* "[t]here is neither a threshold 'magic number' of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." 180 F.3d at 439 (quoting *Rodgers v. Western–Southern Life Ins. Co.,* 12 F.3d 668, 674 (7th Cir.1993) and citing *Harris,* 510 U.S. at 22, 114 S.Ct. 367 (hostile work environment analysis "is not, and by its nature cannot be, a mathematically precise test")).

Considering just conduct that is timely [11] for purposes of federal liability, plaintiff's allegations may state a claim for hostile work environment. This includes statements by Tullgren repeated every week over a two and a half year period that plaintiff "will have to do what it takes to get the business" [12] and that middle aged

---

**10.** Plaintiff's suggestion that the court should use a "reasonable woman" standard for the objective prong is incorrect. *See* Pl.'s Mem. of Law at 22, and cases cited therein. The Second Circuit specifically rejected this approach in *Richardson.* 180 F.3d at 436 n. 3 ("we reject the view of those courts that look to the perspective of the particular ethnic or gender group, e.g., a 'reasonable African–American' or a 'reasonable Jew.' ").

**11.** BA argues that several incidents of which plaintiff complains are barred by Title VII's applicable limitations period of 300 days. *See* BA's Mem. of Law at 23 and 23 n. 24. Plaintiff fails to address this contention in her papers, and has not argued that the continuing violation doctrine allows these incidents

to be considered. Of course, these incidents can be considered by the court as to plaintiff's HRL claim, since it is governed by a three year limitations period, in which all the alleged conduct fits. *See Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).

**12.** BA argues that this statement occurred before the 300 day limitations period, but plaintiff claims in her Response to Interrogatory No. 12 that this statement did not just occur then, but "approximately every week while plaintiff was working for Defendant Bank America," bringing the conduct repeatedly within the 300 day limitations period.

women do not understand men; often exhorting plaintiff to dress seductively or wear sexy clothes, in order to get business; commenting to her that he was sure people thought they were sleeping together; demanding information about her sex life on multiple occasions;[13] trying to feel her breast or breasts, forcing her to dance, dragging her into a bar, telling her to "show me your bra," as to advance in the company she must "show more tit," all on a business trip;[14] fondling plaintiff's hair while she was working; a statement that "it turns me on when you wear your hair up;" and finally, telling Reardon that "Jill must be a fantastic fuck."

Under the *Harris* list of factors, relevant to determining whether harassment is severe and pervasive, (1) some of the conduct is allegedly repeated on a weekly basis for two and a half years; some conduct occurred less often, but has more severe impact; (2) some of the conduct was arguably severe, such as trying to touch her breast(s), taking her accounts, or possibly participating in the decision to fire her; (3) some of the conduct could be construed as physically threatening, like trying to touch her breasts, and physically dragging her into a bar and onto a dance floor; and (4) plaintiff claims that the harassment affected her work, as she took the account executive position, a demotion, to get away from Tullgren, and started writing a diary of the harassment, in part, to manage stress.[15] When the conduct alleged by plaintiff is combined and "considered cumulatively," *Richardson*, 180 F.3d at 437, the court concludes that summary judgment on the hostile work environment claims is not warranted, as reasonable jurors might disagree as to whether the conduct alleged is sufficiently severe and pervasive.

### C. Tullgren's Motion as to Title VII

■ Tullgren moves for summary judgment on the Title VII claim, arguing that he is not a proper defendant. Though the law is quite clear in the Second Circuit, *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir.1995), abrogated on other grounds by *Burlington*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633, plaintiff argues, fruitlessly, that such individual liability can be had. *See* Pl.'s Mem. of Law in Opp'n to Tullgren at 1 (citing *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 184 (6th Cir. 1992)). This is not the rule in the Second Circuit, and to the extent that plaintiff argues the Second Circuit is in error, her quarrel is with the Second Circuit or the Supreme Court-not this court. Even if this court did believe the Second Circuit was in error, it would be bound to follow such a holding. *See S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir.1998) ("A decision of a panel of this Court is binding unless and until it is overruled by the Court *en banc* or by the Supreme Court") (quoting *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir.1995)); *Ithaca College v. N.L.R.B.*, 623 F.2d 224, 228 (2d

---

**13.** Though BA claims that this questioning was for legitimate business purposes, inasmuch as Tullgren suspected plaintiff of sleeping with a client, it is a true issue of fact if this was his motivation, or sole motivation. The only reason the taking of the account in April is not at issue is because plaintiff has not contested that it was taken from her by corporate-higher ups, rather than Tullgren. What Tullgren's motivations were for questioning plaintiff about her sex life, however, are to be determined by the fact finder.

**14.** BA submits affidavit evidence from an independent witness (Reardon) that these events either did not happen, or that they happened in an innocuous manner; this is a classic issue of fact which this court cannot resolve here.

**15.** The court notes BA's argument that because plaintiff believed she continued to do an excellent job during the purported harassment, and was promoted, *see* BA's Mem. of Law at 31–32, plaintiff's work was not affected by the harassment. This argument, however, ignores the fact, as discussed above, that plaintiff claims she was forced to move to another position to get away from Tullgren, and that she was under stress, so she started a diary. Based on this evidence, it is left to a jury to determine whether Tullgren's harassment unreasonably interfered with plaintiff's work.

Cir.1980) (Second Circuit decisions are binding on all inferior courts in this Circuit, despite a court's disagreement).

Plaintiff's claim against Tullgren under Title VII is dismissed.

### D. Tullgren's Motion as to the HRL

■ Tullgren next argues that the HRL claim against him should be dismissed because he did not have an ownership interest in BA, or the authority to fire plaintiff. In *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984), the New York Court of Appeals held than an employee may not be sued individually under the HRL "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Id. Accord Tomka,* 66 F.3d at 1317. Though no evidence shows that Tullgren had the authority to fire plaintiff, or that he had an ownership interest in BA, questions remain as to whether he had the authority to do more than carry out personnel decisions of others; indeed, the facts in this case indicate that he may have taken two accounts from plaintiff in June of 1997, potentially inflicting economic harm. Thus, Tullgren remains an appropriate defendant pursuant to *Patrowich.*

Moreover, he is still a proper defendant under § 296(6) of the HRL, which states that it is unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). In interpreting this section of the statute, the Second Circuit in *Tomka* distinguished *Patrowich* and found that "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the HRL." *Tomka,* 66 F.3d at 1317. The Appellate Division, First Department, has adopted this interpretation as well. *See Steadman v. Sinclair,* 223 A.D.2d 392, 393, 636 N.Y.S.2d 325 (1st Dep't 1996); *Peck v. Sony Music Corp.,* 221 A.D.2d 157, 158, 632 N.Y.S.2d 963 (1st Dep't 1995).[16] Tullgren's motion under the HRL, consequently, is denied.

### C. Plaintiff's Failure to Mitigate Her Damages

■ Finally, BA argues that plaintiff has failed to mitigate her damages, making summary judgment appropriate on the issues of front and back pay. Like victims of any tort or breach of contract, "[v]ictims of employment discrimination are required to mitigate their damages." *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 53 (2d Cir.1998). *Accord Clarke v. Frank,* 960 F.2d 1146, 1152 (2d Cir.1992). The "plaintiff in a Title VII case must attempt to mitigate her damages by using 'reasonable diligence in finding other suitable employment.'" *Dailey v. Societe Generale,* 108 F.3d 451, 455 (2d Cir.1997) (quoting *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982)). *Accord* 42 U.S.C. § 2000e–5(g)(1). A "plaintiff ... can not merely look through want ads ... or spend an insufficient amount of time and effort looking for work. A plaintiff must demonstrate that [she] made and *is making* an effort that is reasonably calculated to find" a job. *Reilly v. Cisneros,* 835 F.Supp. 96, 100 (W.D.N.Y.1993) *aff'd,* 44 F.3d 140 (2d Cir.1995) (citations omitted) (emphasis supplied). The employer usually has the burden of demonstrating that suitable work existed for the

---

**16.** A minority of New York courts disagree with the holdings in *Tomka, Steadman* and *Peck. See, e.g., Trovato v. Air Express Int'l,* 238 A.D.2d 333, 334, 655 N.Y.S.2d 656 (2d Dep't 1997); *Ponticelli v. Zurich Am. Ins. Group,* 16 F.Supp.2d 414, 440 (S.D.N.Y.1998) (declining to exercise supplemental jurisdiction due to the uncertainty of state law). The New York Court of Appeals has yet to resolve the uncertainty. Since the majority of courts follow *Tomka,* however, and *Tomka* is binding law in this Circuit, this court follows *Tomka* as well. *See, e.g., Turner v. Olympic Reg'l Dev. Auth.,* 89 F.Supp.2d 241, 243 (N.D.N.Y.2000) (Kahn, J.) (recognizing uncertainty, and following *Tomka* ); *Arena v. Agip USA Inc.,* 2000 WL 264312, at *3 (S.D.N.Y.2000) (same).

plaintiff, and that this former employee failed to use reasonable effort to find it. *See Dailey,* 108 F.3d at 456; *Clarke,* 960 F.2d at 1152. However, "[A]n employer should not be saddled by a requirement that *it* show other suitable employment in fact existed ... when the employee, who is capable of finding replacement work, failed to pursue employment at all." *Greenway,* 143 F.3d at 54 (emphasis in original) (citing *Weaver v. Casa Gallardo,* Inc., 922 F.2d 1515 (11th Cir.1991) and *Sellers v. Delgado College,* 902 F.2d 1189 (5th Cir. 1990)).

In this case, the BA argues that plaintiff has failed to mitigate her damages at all. It also submits the report of a vocational expert detailing the number and types of jobs for which plaintiff was and is qualified. *See* Rose Aff. Ex. 9. Despite this evidence, plaintiff comes forward with a half-hearted argument that she did mitigate her damages, but only between the time she was fired through June of 1998, more than two years ago, when she voluntarily resigned from another bank position. *See* Pl.'s Aff. at ¶ 19; Pl.'s Mem. of Law at 27. She attempts to distinguish the case law cited by BA by stating that her "attempts [at employment] have been anything but apathetic." Pl.'s Mem. of Law at 27. This may be true as to the period before June of 1998,[17] yet it is undisputed that since then, she has completely failed to mitigate her damages. Accordingly, summary judgment is appropriate as to plaintiff's entitlement to front and back pay after June of 1998.

## CONCLUSION

For the aforementioned reasons, it is hereby:

ORDERED that BA's motion for summary judgment on plaintiff's hostile work environment claims is DENIED; and it is further

ORDERED that Tullgren's motion for summary judgment as to his liability under Title VII is GRANTED; and it is further

ORDERED that Tullgren's motion for summary judgment as to his liability under the HRL is DENIED; and it is further

ORDERED that BA's motion for summary judgment on the issues of front and back pay is GRANTED as to damages after June of 1998, and DENIED as to damages prior to June of 1998; and it is further

ORDERED that this matter will be set down for trial at a time convenient to the court; the parties will be notified of the date.

IT IS SO ORDERED.

---

**17.** BA argues that the proof plaintiff comes forward with now was not timely produced, despite repeated discovery requests, and should be precluded pursuant to Fed.R.Civ.P. 37(a)(2)(A) and 37(b)(2)(B). *See* BA's Reply Mem. of Law at 9. The court need not resolve this issue here, however, because the court finds that plaintiff's affidavit creates issues of fact as to her mitigation up and until June of 1998. Thereafter, however, there is no dispute that plaintiff has utterly failed to mitigate her damages.